In the Matter of the Application of FRANK B. CHAPIN for a Writ of Habeas Corpus to Bring up the Bodies of LAURA MAY GILMORE and GERALDINE P. GILMORE, Infants.

FRANK B. CHAPIN, Petitioner, Appellant; PERCY W. WOODRUFF, Commissioner of Public Welfare of the County of Chenango, Respondent.

Third Department, May 13, 1942.

*Herbert C. Stratton* and *Glenn F. Carter*, for the appellant.

*Lynn N. Peterson, County Attorney*, for the respondent.

PER CURIAM. Appeal by the petitioner from an order dismissing his application for a writ of habeas corpus to obtain custody of his grandchildren, Laura May and Geraldine P. Gilmore, born respectively November 15, 1931, and November 13, 1934. The petitioner alleges that his daughter, the mother, is now an inmate of the Binghamton State Hospital for the Insane, and that the father is a sailor and if living is at some port or place unknown to petitioner. It appears that the children are now in the custody of the commissioner of public welfare of the county of Chenango, and that he is boarding them at public expense. The matter of the custody of the children apparently has been the subject of previous court proceedings, and the judiciary of Chenango county now entertains preconceived ideas as to the petitioner. The present county judge and surrogate, in connection with habeas corpus earlier pending before him on June 9, 1941, said, " The fact that he

[the petitioner] has been running to me every week or so since the first of the year; I have tried to be courteous to him, get rid of him etc.; if it was a question in this proceeding whether the children should go to him, I am certainly prejudiced against that. * * *

"As for the habeas corpus proceeding I am not going to file a disqualifying certificate, I will permit him to withdraw and proceed in Supreme Court if he wishes to."

The petitioner and his trustworthy attorneys, in conformity with the suggestion, sought relief in the Supreme Court by filing a petition for a writ of habeas corpus on August 1, 1941. The writ issued on October tenth following. On the later day, and before any further proceeding in Supreme Court, the Chenango county judge, who had suggested the application to the Supreme Court, acting not as county judge but as surrogate, apparently with the idea that he would oust the Supreme Court of jurisdiction, appointed the county commissioner of public welfare as the legal guardian, and later the Supreme Court determined that the proceeding should be conducted in Surrogate's Court upon the theory that it was not seemly for the Supreme Court and Surrogate's Court to squabble for jurisdiction.

For 250 years the Supreme Court of the Colony and State of New York, as a court of general jurisdiction, has had custody of infants. This ancient obligation, duty and jurisdiction is superior to that of all junior courts. " Guardianship of the person does not always, under all conditions, give absolute right to the custody of the person. The Supreme Court, as the guardian of all infants, has inherent power, in a proper case, to take the custody of the child, even from its general guardian. (*Wilcox* v. *Wilcox*, 14 N. Y. 575; *Matter of Knowack*, 158 N. Y. 482, 490; *Matter of White*, 40 App. Div. 165, 168; *Losey* v. *Stanley*, 147 N. Y. 560.) The right of the general guardian is the same as that of the father, and must submit to the same regulation and control." (*Matter of Lee*, 220 N. Y. 532, 539.)

We have not overlooked the charges and obvious prejudice against the grandfather, Frank B. Chapin, but under the conditions he and his wife, the grandmother, are *in loco parentis* of these children and they should not be under the control of the official who doles out public charity if, as alleged, the petitioner and his wife are proper persons and able and willing to support them. The matter should be investigated by the Supreme Court, without regard to the appointment of the general guardian, and if either of the grandparents is a proper person to take charge of the infants, that disposition should be made. If they are improper persons, the Supreme Court will be able to determine that fact.

It is a wholesome doctrine urged in *Matter of Lee* (*supra*, p. 539): " The Supreme Court and the Surrogate's Court have concurrent jurisdiction in many respects, and the seemly administration of the law demands that their orders do not conflict." It appears that the justice of the Supreme Court who granted the order appealed from regarded it as an admonition to him to dismiss the writ. We do not agree with this. This grandfather and grandmother, with trustworthy counsel, were seeking relief in the County Court. They were told by the county judge that he was prejudiced against the grandfather and that while he would not permit the special county judge to take charge of the matter, he would permit the proceeding to terminate and be renewed in the Supreme Court, and on the very day when the matter came up for hearing in the Supreme Court, the same county judicial officer, acting as surrogate, without notice to the grandparents, who were entitled to be heard, reassumed control of the matter by the appointment of a guardian. This appointment is of doubtful legality. The approval and adoption of such procedure would lead to conflict.

. The order should be reversed on the law and facts, with fifty dollars costs and disbursements payable to the petitioner by the respondent, and the writ of habeas corpus reinstated, the hearing thereon to be held at the Trial Term of the Supreme Court in Binghamton on May 28, 1942, at ten o'clock in the forenoon, to which this proceeding is remitted.

HILL, P. J., CRAPSER, BLISS, HEFFERNAN and SCHENCK, JJ., concur.

Order reversed on the law and facts, with fifty dollars costs and disbursements payable to the petitioner by the respondent, and writ of habeas corpus reinstated, and hearing thereon directed to be held at the Trial Term of the Supreme Court in Binghamton on May 28, 1942, at ten o'clock in the forenoon, to which this proceeding is remitted.