Edgar F. Hazleton, S.
The petitioner prays that she be appointed general guardian of the persons and property of her five grandchildren. Her prayer is opposed by that of the mother of the children who in turn requests that she be appointed general guardian. The father of the children is dead.
The characters in this continuing tragedy are Julia B. Cud-dihy, the petitioning paternal grandmother, Elizabeth Cuddihy Godbee, the mother, Mary Smiley Cuddihy, the stepmother, and the children, Robert A. Cuddihy, age 11, Edith Therese Cud-dihy, age 9, Sean T. Cuddihy, age 7, Michael Elizabeth Cuddihy, age 5 and Christopher K. Cuddihy, age 3.
Elizabeth Ryan and Robert Cuddihy, the natural parents of these children were married on December 28, 1945. This marriage was dissolved by decree of a Mexican court on February 7,1955, which awarded custody of the children to the mother pursuant to a prior separation agreement. On September 15, 1955 Elizabeth Cuddihy married Herbert L. Godbee. On November 20, 1955 Elizabeth Cuddihy Godbee and Robert Cuddihy signed a memorandum in which Elizabeth Cuddihy Godbee gave “ full custody of our five children until such time as I am able to take care of them myself ” to Robert Cuddihy. The following portion of this instrument was initialed by Robert Cuddihy: “It is further understood that Robert Cuddihy agrees to return the custody to me as soon as I am well.”
Robert Cuddihy married Mary Smiley in October of 1956 in Tennessee, the home of her parents. During the absence of their father, the children were removed from his home in Smithtown, Long Island by their mother to her home in Southampton, Long Island. Upon his return Robert Cuddihy instituted a habeas corpus proceeding in the Supreme Court, Suffolk County, in which he prayed that the custody of. the children be awarded to him, which proceeding was terminated *452 by an order' of Mr. Justice L. Barron Hill directing- that the father be awarded the care, custody and control of his children. Robert Cuddihy met his death in an automobile accident in July, 1957.
Since the death of their father the children have resided with Mary Smiley Cuddihy who has aptly fulfilled the responsibility of the supervision and care of these children which was thrust upon her as a result of the untimely demise of their father. It is anticipated by the petitioning grandmother that in the event she be awarded letters of guardianship, the guardian in fact would continue to be Mary Smiley Cuddihy. This would be so not because of a lack of interest in the welfare of her grandchildren, but because her state of health does not permit of anything but a sedentary way of life at her residence in New York City which necessarily precludes active supervision of the children on her part. It would appear that petitioner’s efforts on behalf of her grandchildren would of necessity be limited to her financial support which is substantial. It follows that if I were to grant the petition of the grandmother the result would be guardianship by proxy since under the circumstances, the stepmother would be doing the grandmother’s job. Such an arrangement would commend itself to this court only if there were not available a natural parent to whom letters of guardianship could be granted. Such does not appear to be the case here.
The relationship of parent and child gives to the natural parent the undisputed right to guardianship of the person of the child. Authority is uniform to the effect that as between a natural parent and the rest of the world this priority of right to guardianship will fall only before the most compelling proof of the parent’s unfitness to promote the welfare of the child, which in the final analysis is the paramount consideration of the court.
There is sufficient evidence to indicate that for a period extending some years prior to the habeas corpus proceeding above referred to, Elizabeth Cuddihy Godbee exhibited an emotional instability which manifested itself in sometimes irrational behavior and excessive drinking. Her patterns of behavior with regard to the children ranged from devoted care to lamentable irresponsibility.
While this is not a custody proceeding per se, guardianship of the person implies custody and control of the infants (Matter of Yardum, 228 App. Div. 854). The court therefore has considered the order of Justice Hill as evidence bearing on the fitness of the mother at the time of the habeas corpus proceed *453 ing, although because of the differences in the nature of the two proceedings and of the parties to each of them, it would not of itself be conclusive in the matter before this court. But a lot of water has gone over the dam since that decision, carrying with it much if not all of respondent’s predilection to strong drink. Beginning in March of 1957 she has been receiving sustained psychiatric therapy and has made great progress in overcoming her illness. After listening to all the testimony and observing the natural mother upon the stand this court cannot find that petitioner has proven that Elizabeth Cuddihy Grodbee cannot adequately carry out the duties and responsibilities of a parent.
My decision is that petitioner has not sustained the burden of proof in her contention that the mother, is not a proper person at this time to be entrusted with the guardianship of her children. Therefore, I dismiss the petition of the grandmother and grant the cross petition of the mother. I direct that letters of guardianship of the property of the infants issue to Security National Bank of Huntington and that letters of guardianship of the persons of the infants issue to their mother.
These children are the wards of my court. "What the future holds, to a great extent depends upon the way of life of the mother who should bear in mind that this court will watch over its wards and never hesitate to act as their best interests might dictate. (See Matter of Lewis, 74 N. Y. S. 2d 865, 868.)
Proceed accordingly.
(Supplemental Opinion, December 4, 1957.)
This court has denied the application of the paternal grandmother for letters of guardianship and awarded the guardianship of the infants’ persons to their mother. Previously, their mother and father, each divorced and remarried, had fought out the question of their custody in a habeas corpus proceeding in the Supreme Court, Suffolk County, which terminated with custody being given to the father, who was killed accidentally in July of this year. Since then, the children have been in the custody of their grandmother and stepmother, the latter living with and having the effective control of them.
The decrees appointing their mother guardian of the infants’ persons, which have been submitted on her behalf contain directions to the stepmother to surrender the children to her. These provisions are not acceptable to the court. While it is anticipated that the stepmother will surrender the children to their mother upon her appointment as guardian, in the event she does not so act, a habeas corpus proceeding — the tradi *454 tional methed for obtaining the release or custody of one unlawfully detained — would appear to be the proper way to enforce the guardian’s right to custody. Since the jurisdiction of the Supreme Court anent custody is not foreshortened by the fact that a guardian has been appointed for an infant, as is so clearly set forth by our Court of Appeals in Matter of Lee (220 N. Y. 532, 539) there would appear no justification for this court to anticipate a question, the resolution of which would properly lie in another forum. The inclusion of the proposed directives to the stepmother would in effect be doing just this.
I am mindful that the father of these children, to whom custody was granted, is now dead; and further, that the stepmother has custody of them by virtue of no order of any court (cf. Matter of Lee, supra, p. 538). However, in view of the foregoing, the court has stricken the decretal paragraphs containing the directions to the stepmother and the provisions for the enforcement of same.
Decrees signed accordingly.