John D. Bennett, J.
A dual petition has been filed by Chemical Bank for the voluntary judicial settlement of its accounts in two capacities as above captioned — the first as executor under the decedent’s will and the second as trustee of an inter vivos trust, the remainder of which the decedent poured over into his testamentary estate.
The court originally hesitated to entertain the full proceeding although it relates to the affairs of a decedent, because it also involves settlement of an inter vivos trust. Since the case law is both confusing and contradictory as to jurisdiction, the decision of July 29, 1976 directed consideration of the jurisdictional issue after service of process so that interested parties would have an opportunity to raise the question.
A guardian ad litem has been appointed to represent the decedent’s widow who is incapacitated. He filed his report on November 12, 1976 stating that he found no appellate court decisions satisfactorily covering the question but pointed to the conflicting decisions (1) by Surrogate Midonick of New York County in Matter of Frohlich (87 Misc 2d 518) which referred to an unpublished decision by this court in Matter of Healy (Surrogate’s Ct., Nassau County, June 26, 1975, Bennett, S.) and (2) by Surrogate Laurino of Queens County in *738 Matter of Griffith (NYLJ, July 16, 1976, p 9, col 2). This court and Judge Midonick had taken a liberal view in favor of jurisdiction and Judge Laurino had ruled against jurisdiction for reasons which appeared to him conclusive in the matter before him.
The petition and accounts filed here concern interrelated testamentary and inter vivos trust accountings and involve similar factual and legal determinations as were presented in both the Frohlich and Griffith cases; however, in the face of such divergent views by equally respected and learned Jurists, a thorough review of the jurisdictional problem is clearly in order.
So-called "living trusts” have been generally considered to be solely within the jurisdiction of the Supreme Court of the State of New York. They of course resemble testamentary trusts, which are concurrently within the Surrogate’s Court’s jurisdiction, in that both types have a creator, a corpus or trust principal and a fiduciary. The principles of substantive law as well as procedure concerning the administration, validity and effect of both types are substantially the same. For that reason the Temporary State Commission on the Law of Estates in 1962 (NY Legis Doc, 1962, No. 19) recommended to the State Legislature that jurisdiction concurrently with the Supreme Court be given to the Surrogates’ Courts over all inter vivos trusts, under the authorization of the then newly adopted constitutional provisions discussed later. The Legislature did not grant such general jurisdiction.
With the increased emphasis on the importance of estate planning, the use of living trusts as well as testamentary trusts has expanded considerably over the years. Repeatedly Surrogate’s Courts have been requested to rule upon situations over which they have questionable jurisdiction. Almost invariably the Judge of the particular Surrogate’s Court involved would go through the mechanics either of dismissing the particular application without prejudice or holding it in abeyance so a special action or proceeding could be brought in the Supreme Court and a motion then addressed to the Justice therein asking for removal to the Surrogate’s Court. In some cases the Judge of the Surrogate’s Court requested an advisory opinion from the Chief Administrative Judge, even though such an opinion could not be characterized as official or binding. In the experience of this court, the large majority (or possibly all) of such applications have been granted and in *739 some situations the transfer was made to this court solely on the motion of the Supreme Court Justice even though the matter transferred only an inter vivos trust. This has usually been done, however, where and for the reason that the proceeding or issue involved a decedent or his affairs.
The Supreme and appellate courts have consistently recognized the advisability of concentrating all matters relating to the affairs of a decedent in the Surrogate’s Court and also to pass upon other questions "incidental” thereto so as to avoid multiplicity of actions and proceedings or to facilitate a full, equitable and complete disposition in one proceeding. Even before the 1962 constitutional amendments numerous cases had emphasized that issues within the specialized jurisdiction of the Surrogate’s Court should be determined there (Noll v Ruprecht, 256 App Div 926, affd 282 NY 598; Schmidt v King, 247 NY 578; Sanders v Soutter, 126 NY 193; Matter of Smith, 120 App Div 199; Shearn v Lord, 16 Misc 2d 224, affd 3 AD2d 823).
With the foregoing background in mind the court finds that some review of the judiciary provisions in the Constitution and the statutory basis of jurisdiction is in order so that, hopefully, guidelines may be formulated to indicate where the Surrogates’ Courts can and should assume jurisdiction.
It appears that the decedent’s will and the trust agreement were executed by him on the same date in 1972 and the trust has allegedly been terminated, leaving only the accounting and discharge of the trustee to be adjudicated. It was agreed that the bank would serve as trustee to hold and invest the principal fund during decedent’s lifetime, paying income to him, and upon his death the principal of the trust "poured over” to the decedent’s estate and then held in a testamentary trust. This continuity seems to have been arranged in the interests of economic administration of both the trust and the estate, the bank waiving any termination fee in consideration of being named executor (paragraph eighth of the agreement). Having the two accounts settled in this court at the same time will eliminate extra expense by having one proceeding, one service of process, and avoid duplication of commissions, counsel fees and disbursements; also, the appointment of separate guardians ad litem is avoided. Here the guardian ad litem has reported no objections on behalf of the widow, but there would have been a duplication of his efforts if this court assumed *740 jurisdiction only over the estate accounting and referred the trust accounting to the Supreme Court.
The court finds that it has jurisdiction of both accountings under the New York State Constitution (art. VI, § 12, subd d, quoted in full below) since both relate to "the affairs of’ a decedent and also come within statutory authority. The pertinent constitutional provisions are as follows (NY Const, art VI, § 12):
"d. The surrogate’s court shall have jurisdiction over all actions and proceedings relating to the affairs of decedents, probate of wills, administration of estates and actions and proceedings arising thereunder or pertaining thereto, guardianship of the property of minors, and such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law.
"e. The surrogate’s court shall exercise such equity jurisdiction as may be provided by law.
"f. The provisions of this section shall in no way limit or impair the jurisdiction of the supreme court as set forth in section seven of this article.” (Emphasis supplied.)
Analyzing subdivision d it should be noted that it is composed of one long sentence. That one sentence in its opening uses very specific and definite language, granting to this court constitutional jurisdiction over all actions[1] and proceedings relating to the affairs of decedents. Without stopping there it continues by adding specifically probate and estate administration and then repeats twice the words "actions and proceedings” with guardianship of minors in between. "Guardianship of the property of minors” obviously is an addition to the affairs of decedents’ jurisdiction, but the sentence still is not ended, for after the word "minors” is a comma followed by the clause "and such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law.” (Emphasis supplied.)
The last 21 words in the subdivision are a constitutional grant of authority to the Legislature authorizing it to grant added jurisdiction to this court "by law” over such other actions and proceedings as it may choose, whether or not related to the affairs of decedents or the other enumerated *741 cases, just so long as any such addition would not encroach upon the exclusive jurisdiction of the Supreme Court.
The only exclusive jurisdiction granted in the Constitution to the Supreme Court is stated in subdivision a of section 7 of article VI of the Constitution which reads as follows: “a. The supreme court shall have general original jurisdiction in law and equity and the appellate jurisdiction herein provided. In the city of New York, it shall have exclusive jurisdiction over crimes prosecuted by indictment, provided, however, that the legislature may grant to the city-wide court of criminal jurisdiction of the city of New York jurisdiction over misdemeanors prosecuted by indictment and to the family court in the city of New York jurisdiction over crimes and offenses by or against minors or between spouses or between parent and child or between members of the same family or household.” (Emphasis supplied.)
The first sentence of subdivision a gives to the Supreme Court general original jurisdiction in law and equity plus certain appellate jurisdiction. The second sentence grants exclusive jurisdiction over only a limited type of crimes with which we are not concerned since it does not affect the jurisdiction of this court.
Subdivision c of section 7 of article VI of the Constitution reads as follows: "c. If the legislature shall create new classes of actions and proceedings, the supreme court shall have jurisdiction over such classes of actions and proceedings, but the legislature may provide that another court or other courts shall also have jurisdiction and that actions and proceedings of such classes may be originated in such other court or courts.” (Emphasis supplied.)
This provision has significance when read in conjunction with the last sentence of subdivision d of section 12 which refers to the Supreme Court’s exclusive jurisdiction. The significance is that subdivision c of section 7 contemplates only that if the Legislature creates any new classes of actions and proceedings, the Supreme Court must have jurisdiction over the same but the Legislature may grant concurrent jurisdiction to one or more other courts and may even allow such new classes to originate in any other court or courts.
All of the foregoing constitutional provisions were adopted in 1961, effective on September 1, 1962, and it is to be noted that the Constitution itself provides in subdivision e of section 11, subdivision f of section 12, subdivision d of section 13 and *742 subdivision d of section 15 of article VI that the provisions of such sections "shall in no way limit or impair the jurisdiction of the supreme court as set forth in” section 7 of article VI.
The constitutionally granted general original jurisdiction in law and equity with all the precautionary clauses above renders the Supreme Court all-powerful in the sense that it is constitutionally unlimited and comprehensive. Traditionally and by virtue of prior authority, before and since the Constitution was thus amended, the Supreme Court has exercised full original jurisdiction over "inter vivos” trusts (as well as all other matters). As the very term implies such trusts are created by living persons. During the term and active administration thereof, such trusts do not usually have anything to do with the affairs of a decedent. Actions or proceedings involving questions or disputes while the trusts are active and do not relate to a decedent have consistently been instituted in the Supreme Court and do not belong in the Surrogate’s Court, as noted in this opinion.[2]
In a vast majority of actions or proceedings involving "living” trusts the broad and all-inclusive jurisdiction of the Supreme Court is of considerable advantage but modern estate planning also recognizes the wisdom in appropriate cases of combining living trusts with testamentary trusts. When death intervenes, the same or similar questions arise concerning both types of trusts especially in the fields of trust accounting and issues involving conflicts in fiduciary responsibility. For instance, where a lifetime grantor has died after involving his testamentary scheme with his lifetime plans, the questions and issues arising as to an inter vivos trust and the will itself must necessarily relate to the decedent’s affairs. The Surrogate’s Court has the needed personnel and expertise with which to cope with all such questions and in the opinion of this court that facility and expertise were recognized by the people in amending the Constitution and by the Legislature in its implementation thereof.
When the Temporary State Commission on the Law of Estates made its studies and recommendations (now incorporated in NY Legis Doc, 1966, No. 19), one of the recommendations was to grant to the Surrogates’ Courts complete jurisdiction over inter vivos trusts. That recommendation was not *743 adopted over inter vivos trusts generally but it must be recognized that the constitutional grant to this court of jurisdiction in all actions and proceedings relating to the affairs of decedents prohibits even the Legislature from passing any law which would fragment such jurisdiction and, either directly or impliedly, make an exception to such jurisdiction merely because the matter involves an agreement or trust created during the decedent’s life. There can be only one conclusion: that the constitutional jurisdiction could be expanded and further implemented by the Legislature, but it could not be restricted or lessened in matters relating to decedent’s affairs.
This brings us to a consideration of the statutory enactments of chapter 953 of the Laws of 1966 in particular SCPA article 2 dealing with the "Jurisdiction and Powers of the Surrogate’s Courts.” Much has been written on the subject by Professor David D. Siegel in his Practice Commentaries, (Siegel, Practice Commentaries, McKinneys Cons. Laws of NY, Book 58A, SCPA, art 2) in the Revised Notes and by other authors too numerous to mention here. It should suffice for the present purpose to quote parts of the SCPA. SCPA 201 (subds 2, 3) read as follows:
"2. This and any grant of jurisdiction to the court shall be deemed an affirmative exercise of the legislative power under § 12(e) of article VI of the Constitution and shall in all instances be deemed to include and confer upon the [Surrogate’s] court full equity jurisdiction as to any action, proceeding or other matter over which jurisdiction is or may be conferred.
"3. The court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising * * * between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires. ’’(Emphasis supplied.)
SCPA 202 reads in part as follows: "The proceedings enumerated in this act shall not be deemed exclusive and the court is empowered in any proceeding, whether or not specifically provided for, to exercise any of the jurisdiction granted to it by this act or other provisions of law, notwithstanding *744 that the jurisdiction sought to be exercised in the proceeding is or may be exercised in or incidental to a different proceeding.” (Emphasis supplied.)
The history and gradual expansion of the Surrogates’ Courts should be borne in mind. Its earlier limited judicial power as a court not of record, the various changes before and after the English conquest of the Dutch Province of New York, at which times it was known by many names and its jurisdiction was clouded in mystery. It became known as the Mayor’s Court and later, the Prerogative Court; its functions were performed in part by the Governor or a "Delegate” and divided between the "City” of New York and "Albany” or its counterpart (see Matter of Runk, 200 NY 447, 452 et seq.; and Matter of Brick, 15 Abb Prac 12). The earlier jurisdiction is traced back to the ecclesiastical courts and the English Chancery.
By degrees its general jurisdiction was expanded and made more effective and expeditious. In 1911 the Court of Appeals in Runk (p 455) referred to the then "third and latest stage in the historical development of the jurisdiction”. It was there pointed out that although Surrogates’ Courts had by then become courts of record, they possessed no jurisdiction except such as had been especially conferred by statute. The Runk case cleared up a question (which then had great importance) whether the Surrogates’ Courts had jurisdiction to settle the accounts of testamentary trustees who had been appointed by the Supreme Court. The Code of Civil Procedure had codified the previously general and incomplete legislation into a separate chapter relating to the Surrogate’s Court and, among other things, provided that any testamentary trustee "appointed by any competent authority” may at any time file and judicially settle his accounts before the Surrogate. The revised statutes then provided that under certain circumstances a trust if not executed would vest in the Court of Chancery and be executed under the direction of that court. The law at that time vested the Supreme Court with exclusive jurisdiction to appoint substitutes or successors for deceased testamentary trustees, primarily because of certain requirements that the compensation of a substituted trustee would be fixed by the court appointing him. The argument then was that it would be "incongruous” to give the Surrogate’s Court the power to entertain proceedings over testamentary trusts while the Supreme Court alone had the power to appoint and fix the *745 compensation of a "substituted or successor” trustee. The opinion exhaustively covers questions of jurisdiction existing at that time as between the Surrogate’s Court and the Supreme Court as the successor of the Court of Chancery. In essence the opinion pointed out that the Supreme Court had always had jurisdiction over all classes of trusts and it held that such jurisdiction was not exclusive, stating (Matter of Runk, supra, pp 460-461): "When the substituted trustee had completed the work for which he was appointed, he found that there were two methods by which he could account and obtain his discharge. One was in the court of original jurisdiction, the Supreme Court, which had appointed him, where the procedure was in the form of an action involving much cumbersome and expensive practice. The other was in the Surrogate’s Court, to which the legislature had delegated many powers which had formerly inhered solely in the Supreme Court, and in the Surrogate’s Court the trustee was authorized to proceed upon a simple petition asking for the issuance of citations to those who were interested in the distribution of the corpus of the trust fund. In choosing this simpler and more expeditious method of accounting, the trustee exercised a right that always exists when two or more tribunals are given jurisdiction of the same subject-matter. Such concurrent jurisdiction is neither rare nor anomalous. Wherever it exists there is always the practically negligible possibility of a conflict of authority, but experience has demonstrated that such difficulties are more often imaginary than real, and when they do arise they can easily be adjusted. The Supreme Court, in a proper case and in the exercise of its undoubted power, can interpose by stay of proceedings or otherwise when necessary.”[3] (Emphasis supplied.)
Then, after discussing an illustration where the Supreme Court "might well assume to continue control of a trust” the unanimous Court of Appeals said (p 461): "The case at bar is an equally cogent example of another class of trusts as to which the power of either court is ample in all proceedings for a ñnal accounting. The Supreme Court can, in the exercise of its original jurisdiction, assume to control the proceeding, but that power is permissive rather than compulsory, so long as *746 there is another tribunal which also has the right to act in the same matter.[4]
After discussing some "unfortunate and confusing” language in the Real and Personal Property Laws in 1911 and recommending legislative changes, the Bunk court closed its opinion by stating (p 463): "However that may be, the fact remains that none of these cases deal with the essential point in the case at bar, which is, that any trustee, whether appointed by a last will and testament or by any other competent authority, is now authorized by express legislative enactment to render his accounts to the proper Surrogate’s Court.”
There should be accordingly no real conflict in the concurrent jurisdiction between the Supreme Court and this court where the action or proceeding relates to the affairs of a decedent. The relationship between both courts having been one of comity and accommodation, the Surrogate’s Court will fulfill its constitutional and statutory obligations by entertaining any proceeding which relates to such "affairs” since the Legislature has not provided otherwise, even where an inter vivos trust is incidentally involved.
There is a reference to "inter vivos trusts” at the end of SCPA 209 (subd 4) but the same is construed as not prohibiting jurisdiction in a case of this kind where the inter vivos trust has terminated and the "affairs of a decedent” are involved. In other words the court is literally not exercising jurisdiction over the trust, as such, but is merely undertaking to exercise the jurisdiction conferred upon it by the Constitution which cannot be limited or contravened by an act of the Legislature.
In 1968 this court had occasion to consider the constitutional and statutory jurisdiction of this court (Matter of Mac-Elroy, 58 Misc 2d 93). That case did not involve or relate to an inter vivos trust so that its statement therein referring to such trusts was obiter dicta to the effect that (p 96): "one area expressly reserved is inter vivos trusts, which often give rise to problems after death but apparently are regarded by the Legislature as not being sufficiently related to the affairs of decedents to give jurisdiction to the Surrogates’ Courts, except in certain limited aspects not necessary to mention here.” However, what the court then had in mind is now substantially covered by this opinion.
*747 Upon reconsidering the MacElroy statement the court finds that it was in error, for the Legislature did not expressly reserve inter vivos trusts from this court’s jurisdiction. The last sentence of SCPA 209 (subd 4) is merely a caution that the Legislature was not thereby conferring jurisdiction generally "over” inter vivos trusts. The petition now before the court as to the trustee’s accounting involves the past acts and proceedings in the trust which took place during the lifetime of the decedent and to that extent relates to the latter’s affairs. The distribution by itself as trustee to itself as executor of the decedent’s estate will be examined and passed upon now for such accounting now relates to the affairs of this decedent within the constitutional orbit.
The Legislature, too, has affirmatively granted to this court "full and complete general jurisdiction in law and in equity * * * in all matters relating to the affairs of decedents * * * in order to make a full, equitable and complete disposition of the matter * * * as justice requires.” (SCPA 201, subd 3, quoted in full above; emphasis supplied.) This alone is substantiation and confirmation, passed in 1966, implementing and expanding the constitutional jurisdiction of the court, as a result of which the viability of any prior decisions to the contrary is extremely doubtful.
This court probated the will of this decedent, has had and still has full jurisdiction of all proceedings relating to that decedent’s affairs. The inter vivos trust agreement made by the decedent during his lifetime with the petitioner bank "relates” to his "affairs” as much as the will itself. That same bank in its capacity as trustee of the trust which has now terminated, and also in its capacity as executor of the decedent’s will, is accounting to the same parties and settling its accounts in both capacities. As authorized by the Constitution and its additional general jurisdiction in law and in equity granted by the Legislature, the court finds that it has full and complete jurisdiction of this proceeding. It will accordingly settle both accounts and determine any questions or issues that may arise herein.

. It is to be noted that "actions” are not commenced in this court, thus a recognition that relevant actions may, and in a proper case should, be transferred to this court.

. Indeed, if instituted here they should be transferred by this court to the supreme court or other appropriate court as directed by the Constitution in subdivision d of section 19 of article VI.

. In essence we are now dealing with a similar situation where the difficulties are more imaginary than real, and can be easily adjusted, since both courts have concurrent jurisdiction.

. As stated above and developed herein, both courts have full, original and concurrent jurisdiction.