Millard L. Midonick, S.
The preliminary executor (an attorney) has brought a discovery proceeding pursuant to SCPA 2103 seeking (1) the turnover of certain records and documents of the decedent, a psychiatrist, which are in the possession of the respondent, who is also a psychiatrist, and (2) the examination of the respondent psychiatrist with respect to the delivery of such records and documents. The petition of the preliminary executor also alleges that the respondent’s refusal to deliver such records as well as his misappropriation of patients of the decedent following the decedent’s death has deprived the estate of a valuable asset and caused the estate *551 monetary loss for which the respondent should be required to compensate the estate. The respondent has moved (1) to dismiss the petition on the ground that pursuant to CPLR 3211 (subd [a], par 7), the petition fails to state a cause of action, or (2) in the alternate for an order directing that the patients be made parties to the proceeding.
In an application to dismiss a petition for failure to state a cause of action, the petitioner’s allegations are presumed to be true. (William v Williams, 23 NY2d 592, 595-596.)
The petition alleges that shortly after the decedent’s death, the preliminary executor learned that the keys to the decedent’s office wherein he kept his medical records were entrusted to the respondent, a practicing psychiatrist. With the knowledge of the preliminary executor, respondent was permitted to notify the patients of decedent’s death and to administer prompt medical attention, so as to preserve the practice. Respondent was instructed, however, that nothing was to be removed from the office and that petitioner intended to "sell” the practice. Upon recovering the keys to the office from respondent, petitioner discovered that a number of decedent’s files were missing. Petitioner demanded that the respondent return the decedent’s medical records to the estate and respondent has failed to do so. The petition further states that continued delay in the delivery of such books and records to a prospective purchaser of the decedent’s psychiatric practice will adversely affect the monetary value of the practice. It is further alleged that the respondent has already begun treating some of the patients of the decedent and that the estate is thus being deprived of a valuable asset. The respondent has produced authorizations signed by the decedent’s private (non-Medicaid) patients and continues to keep control over the records of such patients. The preliminary executor alleges that the estate is unable to "sell” the decedent’s practice without these private patients and their files and has thus sustained a loss. In addition, the petitioner claimed that the files, as well as the names and addresses of the patients, are needed by the estate for the purpose of determining the decedent’s income and ascertaining whether any debts are owed to the estate by the patients. At the argument of the motion, the court directed the respondent to turn over to the preliminary executor the names and addresses and billing information relating to these patients, and he has done so. The issues to be resolved in connection with the motion to *552 dismiss the petition are thus, (1) whether the estate is entitled to possession of the decedent’s medical records, and (2) whether the executor can examine the respondent with respect to his alleged misappropriation of a part of the decedent’s practice.
The law in New York State is clear "that records taken by a doctor in the examination and treatment of a patient become property belonging to the doctor.” (Matter of Culbertson, 57 Misc 2d 391, 392-393.) That case involved a direction by a deceased doctor in his last will and testament for the destruction of his records upon his death. The court declared such a paragraph to be void. The patients in that case, nevertheless, were not permitted to have their records turned over to them. Basically, the court found that while the estate was required to retain possession of the actual records it must allow copies to be given to authorized persons. Similarly, a Federal District Court has noted that New York as well as the vast majority of States hold "that medical records are the property of the physician or the hospital and not the property of the patient.” (Gotkin v Miller, 379 F Supp 859, 866-867, affd 514 F2d 125.) Likewise, courts in other jurisdictions have held that medical records, such as X rays, optometrist files, and mental hospital records, are the property of the doctor or hospital. (E.g., McGarry v Mercier Co., 272 Mich 501; cf. Corliss v Walker Co., 64 F 280; Abelson’s, Inc. v New Jersey State Bd. of Optometrists, 5 NJ 412; Cannell v Medical & Surgical Clinic, S. C., 21 Ill App 3d 383; Wolfe v Beal, 23 Pa Commonwealth Ct 475.) It is interesting to note that the multitude of the cases in this area have involved whether or not individuals or their authorized agents could inspect the records. (Bush v Kallen, 123 NJ Super 175; Shikara v Commissioner of Mental Health, 352 Mass 779, cert den 389 US 899; Bane v Superintendent of Boston State Hosp., 350 Mass 637, cert den 385 US 842; Gaertner v State of Michigan, 385 Mich 49; see, also, Covington v Harris, 419 F2d 617; Fanshaw v Medical Protective Assn. of Fort Wayne, Ind., 52 Wis 234; CPLR 4505; 1 Lawyers’ Medical Cyclopedia [rev ed], § 3.21.) Each of the cited cases was decided on its particular facts; nevertheless, the courts which allowed the records to be inspected by the patients did not permit possession of the documents themselves by the patients.
As evidenced by the above law, it is clear that respondent, even if authorized by the patients, is not entitled to possession *553 of decedent’s records of those patients. Neither are the patients themselves entitled to their records. This does not mean that the actual records cannot be turned over if the estate so chooses, subject to the patient’s right to confidentiality. If the estate does not wish to turn them over, it has the right to retain them. Therefore, respondent must return to the preliminary executor the original records of the eight former patients of decedent in question. Either before that time or thereafter he is entitled to a copy of those records based upon each patient’s authorization. The preliminary executor at all times has been willing so to provide respondent with a copy of those records. However, the estate is not obligated to bear the expense of copying.
With respect to that portion of the respondent’s application to dismiss for failure to join necessary parties, as noted above, the patients have no right to their physical records. They are, therefore, not necessary parties to this application or the discovery proceeding.
As stated above, the second issue before the court for determination relates to whether damages can be recovered by the estate from the respondent as a result of his alleged actions. One issue which the parties do not raise but which must be decided before reaching the damages issue is whether this court has subject matter jurisdiction over the action for damages.
Jurisdiction of the Surrogate’s Court was clarified in 1962 by the new language of section 12 of article VI of the State Constitution. In the cases which have followed that amendment, the courts have allowed discovery proceedings under SCPA 2103 in various matters. (Matter of Reiner, 86 Misc 2d 511; Matter of Young, 80 Misc 2d 937; Matter of Goldstein, 79 Misc 2d 4; Matter of Hall, 54 Misc 2d 923; cf. Matter of Rothko, 69 Misc 2d 752, affd 40 AD2d 1083.) Some of those issues which the Surrogate’s Court has found to be within its jurisdiction involve loans, royalties, contractual agreements, debts and title to real property as a basis for entitlement to rents therefrom. In each instance a favorable determination on the issue would bring assets into the estate. Each court found that it was in the best interests of the estate to have the matter decided in one court. The facts of this case similarly require that this court retain jurisdiction in the best interests of the estate. Since personal jurisdiction has been *554 acquired over all necessary parties to the dispute, the entire matter can best be resolved here.
The respondent alleges that the petitioner’s allegation of misappropriation of an estate asset, namely a part of the decedent’s psychiatric practice, does not state a cause of action and cannot be the basis for the claim of damages resulting therefrom. Firstly, respondent maintains that the preliminary executor, the widow and the decedent’s son, authorized access to the patients and possession of the records and thus waived any objection to such actions. Secondly, respondent submits the estate cannot sell records of patients and, therefore, has not sustained any loss as a result of the respondent’s actions. As for respondent’s first contention, it raises questions of fact to be determined after his examination in discovery and a trial thereon. While it cannot be determined at this time whether the cause of action is one sounding in contract, tort or otherwise, there are allegations which present issues relating to damage to the estate, such as "it is preposterous to suggest, as respondent has * * * that he should fall heir to decedent’s practice without full and adequate compensation”.
Similarly, the respondent’s second contention raises questions of fact to be determined upon a trial. The court recognizes that there are restrictions on the disclosure of privileged communications between a physician and patient (CPLR 4504). The office of the general counsel of the American Medical Association has published a position paper entitled, "Sale or Disposition of a Medical Practice”, which states at pages 14-15 as follows: "Therefore, in purchasing the practice of a retiring or deceased physician, the purchasing physician may not acquire the medical records of the patients without the express written consent and direction of the patient. Of course, the patient may not be solicited for this consent by either the purchasing or the selling physician. The proper procedure would be for the retiring physician or the family of the deceased physician to notify the patient of the fact of the doctor’s death or retirement and advise the patient that his or her medical records will be transferred to whichever physician the patient wishes to consult, but that the patient must advise the physician in writing. In the normal course of this procedure, the purchasing physician will probably get the largest portion of the patients. He should receive for his use only the records of those patients who have elected to be treated by him.” Section 9 of the Principles of Medical Ethics (American *555 Journal of Psychiatry, Sept., 1973) prohibits a physician from revealing confidences entrusted to him by a patient and the annotations thereto provide that even the identification of a person as a psychiatric patient must be protected with extreme care. Whether American Medical Association and its American Psychiatric Association limitations on disposing of a practice will be followed remains for determination upon the facts and the law. The successor physician, if it is so arranged or agreed, does acquire the opportunity to have the patients notified by the predecessor physician or his estate of retirement or death. Thereafter, if we are to follow the opinion of the general counsel of the American Medical Association and the caveat of the American Psychiatric Association, the patients choose whether or not their names may be submitted to a successor physician, and whether or not they wish to be communicated with or to be treated by the new physician. Such an opportunity to notify patients, and to have some expectation that the patients will be treated by the proposed successor physician, belongs to the estate and may have value. If the respondent’s alleged actions went beyond proper authorization and interfered with the estate’s right to notify the patients and impaired such expectation, he may be liable to compensate the estate for any proven loss caused by his actions. Of course, the court cannot determine this issue on the merits at this time. The court will, however, permit the executor to examine the respondent pursuant to SCPA 2103 as requested.
For all of the foregoing reasons the application to dismiss the discovery proceeding is denied in its entirety. Respondent is directed to submit to disclosure in accordance with the order of this court dated March 3, 1977 on a date mutually agreeable with the parties. If the parties cannot agree to a date in the order to be submitted, the court will fix an appropriate date therein.