OPINION OF THE COURT
Millard L. Midonick, S.
In this adoption proceeding, petitioner, the present husband of the natural mother, seeks to adopt his wife’s out-of-wedlock child. The petition is opposed by the natural father. In the alternative, the natural father seeks visitation. The petitioner and the natural mother oppose visitation.
The child was born on November 2, 1971. The natural mother was 16 and the natural father was 18 at the time of the child’s birth. The natural father’s name was recorded on the birth certificate. It is conceded that the parents of the child saw each other frequently during pregnancy, that the natural father was present at the hospital at the child’s birth and that he visited the child during the first three months of life. Thereafter, the amount of contact between the father and the child, who resided with the natural mother and her *1086 family, is in dispute. The natural mother has testified that the natural father has failed to visit or support the child. She acknowledges that the paternal grandmother has given the child gifts totaling approximately $200 in value. She agrees that she has met the natural father by chance on the street, that he visited her house during Christmas of 1974 and that he sent her a valentine on Valentine’s Day, 1977.
The natural father, who since October, 1976 has been in the military service, is stationed in West Germany as a private first class in the United States Army. He applied for, and was granted leave in order to appear at the hearing. He has testified that he visited the child frequently through 1974 and that thereafter the natural mother was uncooperative and made it difficult for him to see the child. He claims that he has supported the child through cash payments. Since entering the army he has signed for a $150 per month allotment to be sent to his mother for the support of the child because he lacked the natural mother’s address. He has also taken out a $25,000 life insurance policy for the child and the natural mother. The paternal grandmother has testified that she commingled the $150 per month allotment with her own bank account. She now has $900 retained for the benefit of the child.
On May 28, 1977, the natural mother married her present husband who seeks to adopt the child. He had been her fiancé and then husband for the past five and one-half years. He is the only father the child appears to know.
Section 111 of the Domestic Relations Law requires the consent for adoption of a married father unless he has abandoned or permanently neglected the child. While the consent of the natural mother of an out-of-wedlock child is necessary, the consent of the unmarried father is not required. (Domestic Relations Law, § 111, subd 1, par [c].) He is, nonetheless, entitled to due process of law in the form of his day in court. An unmarried father, it is recognized, has such interest in his child that he is entitled to notice of proceedings for adoption of the child. (Rothstein v Lutheran Social Servs. of Wis., 405 US 1051; "Doe” v Department of Social Servs. of City of Poughkeepsie, 71 Misc 2d 666; State ex rel. Lewis v Lutheran Social Servs. of Wis., 59 Wis 2d 1.) An unwed father, it has been held, is entitled to a hearing on his fitness as a parent before custody of his children can be taken from him. (Stanley v Illinois, 405 US 645.) In the case at bar, the unwed father *1087 has had his day in court to which he is entitled and has had the benefit of counsel.
Notably, section 111 (subd 1, par [c]) of the Domestic Relations Law, on which this court relies, was previously declared constitutional by the Court of Appeals of New York State in Matter of Malpica-Orsini (36 NY2d 568) and that opinion has been recently affirmed by the Supreme Court of the United States. (Orsini v Blasi, 423 US 1042.) The New York Court of Appeals held not only that consent of an unwed father was unnecessary to adoption by the stepfather, but also that abandonment of the child by the father need not be established. Regular support and visitation by the losing father was emphasized in the dissent. (Matter of Malpica-Orsini, supra, p 590.) The majority expressly held (p 576): "To contend that at least some of the fathers of children born out of wedlock should be accorded the option or veto of consent is meaningless as far as ameliorating the problem. To grant this right to those who acknowledge paternity would require a most difficult search and constant inquiry. To extend it to those who have contributed to the support of the child would be an excursion into relative values difficult of proof.”
This decision was upheld on appeal to the United States Supreme Court under the name of Orsini v Blasi (supra) where the United States Supreme Court stated with respect to constitutionality of section 111 of the Domestic Relations Law: "Appeal from Ct. App. N. Y. dismissed for want of [a] substantial federal question. Mr. Justice Brennan and Mr. Justice White would note probable jurisdiction and set the case for oral argument.” This unequivocal holding that the consent or abandonment of the unwed father is unnecessary, focuses the issue upon whether or not the best interests of the child will be promoted by the adoption to which the natural father objects.
The present husband of the natural mother has known the child almost since birth. He has supported and nurtured the child. The child considers him to be his father. He considers the parents of the petitioner to be his paternal grandparents. The guardian ad litem for the infant favors the adoption. It is in the best interests of the child to preserve a stable and happy home. The liaison of the unwed father with the mother when she was underage, and his disinclination to marry her when his baby was expected, should not be overlooked.
All of the facts found above and the fact that the race and *1088 religion of all persons concerned are the same lead unmistakably to the conclusion that adoption by the stepfather, who is the husband of the mother, should be granted in the best interests of this child.
By way of caveat, it is well to observe that this progressive recognition of the best interests rights of the infant child of unwed fathers, may one day lead to substantially equal protection rights to afford best interests protection by adoption to the infant children even of wed fathers.
Apart from best interests, in deference to the two dissenting Justices in Orsini v Blasi (423 US 1042, supra), this court also finds independently that the adoption should be granted in the alternative on the basis of abandonment by the natural father (Domestic Relations Law, § 111, subd 2, par [a]). Additional facts indicating abandonment are set forth below.
Abandonment has been defined by the Court of Appeals as " 'a settled purpose to be rid of all parental obligations and to forego all parental rights.’ ” (Matter of Susan W. v Talbot G., 34 NY2d 76, 80.) By statutory amendment since that decision, a "flicker of interest” on the part of a parent will not preclude a finding of abandonment by a parent. (Domestic Relations Law, § 111, subd 6, par [b].)
The natural father has failed to show satisfactorily that he has visited or supported his child in recent years. The allotment made out in the name of his mother rather than in the name of his child is not sufficient indication of support. Naming the natural mother and child, perhaps in anticipation of this hearing, as beneficiaries of a revocable life insurance policy is a mere "flicker of interest”. His inability to locate the natural mother, who until her marriage lived less than a mile from his home, is improbable.
We turn now to the application by the natural father, in the event that adoption is granted, for visitation rights. Even though the natural father suggests that his role will be no more than that of a big brother or a divorced father, the present husband petitioner objects to the intrusion of his wife’s former male friend into the household. A former paramour is not the same as a former husband as objectant’s counsel suggests. To permit this paramour, albeit the natural father, visitation rights either by denying the order for adoption or granting adoption with visitation, would not serve to promote a congenial family atmosphere which the child deserves. Courts now demonstrate a growing judicial concern *1089 that "a child is a person, and not a subperson over whom the parent has an absolute possessory interest.” (See Matter of Bennett v Jeffreys, 40 NY2d 543, 546.)
Although visitation has been awarded after adoption upon consent of all parties (Matter of Raana Beth N., 78 Misc 2d 105), consent is lacking here.
This court has Supreme Court powers to rule on the support obligations of the natural father. (SCPA 209; NY Const, art VI, § 7; see Matter of Seitz v Drogheo, 21 NY2d 181; Kagen v Kagen, 21 NY2d 532.) Pursuant to said power, the court hereby cancels any arrears which may be owing for past child support from the natural father.
Accordingly, the court finds that the best interests of the child will be served by granting the adoption and denying visitation.