OPINION OF THE COURT
Bertram R. Gelfand, S.
This is an application to punish respondent, former guardian of the infant, for contempt for failing to obey a decree of this court entered on July 1, 1977, which revoked her letters of guardianship of the person of the infant and directed her to forthwith return custody of the child to her parents. The decree of July 1, 1977 was unanimously affirmed by an order of the Appellate Division entered November 10, 1977. Leave to appeal to the Court of Appeals was denied. A stay of the July 1, 1977 order expired on November 24, 1977 due to the service of the order of the Appellate Division with notice of entry upon respondent (CPLR 5519, subd [e]). It is not contended that any further stay was ever granted by any court.
Petitioner in this application is the infant’s mother. In addition to the former guardian the application names as a respondent the attorney for the former guardian. As against him an order is sought directing said attorney to disclose the whereabouts of respondent and the infant.
Respondent, former guardian, having removed herself and the infant from the address filed in this court in the guardian proceeding, petitioner with due diligence has been unable to personally serve process upon her. No application for substituted service was presented. Accordingly, the application against the respondent, former guardian, must be dismissed. The only issues remaining relate to the respondent attorney.
The attorney concedes that his client failed to obey the decree of the court directing that custody of the infant be returned to the parents. He candidly concedes that he believes that he knows the present whereabouts of his client and the infant. Nevertheless, he opposes divulging this information on the ground that it is privileged under CPLR 4503 (subd [a]). He also contends that he has the right to remain mute because the Surrogate’s Court lacked jurisdiction to make a determination as to custody and therefore, the court’s decree with regard to the custody of the infant was a nullity.
The question of jurisdiction to direct a change in custody upon the revocation of letters of guardianship is raised before *98 this court for the first time in respondent’s opposition to this application. In fairness to respondent the court has endeavored to fully research the issue. This research suggests that the authority in support of his position is minimal and essentially distinguishable.
The Appellate Division, Third Department, in People ex rel. Charbonneau (34 AD2d 1034), held that when a habeas corpus petition is instituted in the Supreme Court to regain custody of a child, an ab initio hearing should be conducted, even after a previous hearing in Surrogate’s Court involving the same parties had granted letters of guardianship to one of them. This decision does not indicate that such multiple proceedings are essential, but merely if instituted each court should hold its own hearing.
Matter of Cuddihy (8 Misc 2d 450, 453) reaches a conclusion in reliance upon Matter of Lee (220 NY 532), indicating that the learned Surrogate in that 1957 decision concluded that the Surrogate’s Court should not issue an order directing custody. This conclusion predated the enactment of the present article VI of the New York State Constitution. It is further respectfully concluded that the reliance on Matter of Lee (supra), in reaching said conclusion, was misplaced. In Matter of Lee (supra), two weeks after the Supreme Court had awarded custody to one party, a guardian proceeding was instituted in the Surrogate’s Court which resulted in another person being appointed guardian of the person of the infant. The guardian appointed by the Surrogate thereafter seized the infant upon the streets without the benefit of any court order authorizing such action. The Court of Appeals resolved the conflicting orders with the following language (p 539): "The Supreme Court and the Surrogate’s Court have concurrent jurisdiction in many respects, and the seemly administration of the law demands that their orders do not conflict. (Garlock v. Vandevort, 128 N. Y. 374; Schuehle v. Reiman, 86 N. Y. 270; Sloan v. Beard, 125 App. Div. 625; Platt v. N. Y. & Sea Beach Ry. Co., 170 N. Y. 451, 458; Silver & Co. v. Waterman, 127 App. Div. 339; Mugler v. Castleton Hotel & Realty Co., 168 App. Div. 492.)
"We, therefore, hold that while the surrogate had full jurisdiction to appoint De Witt H. Lyon general guardian of the person and property of William Crossman Lee, yet the guardian should not have taken the boy out of the possession of the Lees, which was the possession of the Supreme Court, *99 without application to that court. We by no means intimate that the decision of the surrogate upon this matter was incorrect or that the Lees are fit persons to have the custody of the boy. We go no further than to rule upon a point of conflicting procedure in order that such difficulties may not arise again. ” (Emphasis added.)
It appears that the essential question before the Court of Appeals in Matter of Lee (220 NY 532, supra) and the issue which was resolved therein was one created by conflicting orders of different courts exercising concurrent jurisdiction over the same subject matter. It was not a determination that had the Surrogate’s Court been the only court exercising jurisdiction it would not have the requisite authority to grant the litigants final and meaningful relief. The subsequent cases in which Matter of Lee (supra) has been cited rely upon it for the proposition that when different courts have concurrent jurisdiction their orders should not conflict and the second court should defer to the first (Matter of Burde, 7 AD2d 344, 346, affd 6 NY2d 941; People ex rel. Hahn v Haines, 1 AD2d 263, 267, affd 1 NY2d 835; Matter of Gilmore, 264 App Div 172, 174; People ex rel. Glendening v Glendening, 259 App Div 384, 387, affd 284 NY 598; Matter of Volkmar, 254 App Div 225, 227, affd 279 NY 797; Matter of Farmers’ Loan & Trust Co., 123 Misc 600, 602, holding that the Supreme Court should not accept jurisdiction over any matter relating to the property of an infant, when the Surrogate had first exercised jurisdiction on this subject). Moreover, in Matter of Berman v Berman (169 Misc 921, 925) and Matter of de Saulles (101 Misc 447, 450, 465), the courts cited Matter of Lee (220 NY 532, supra) and concluded that the Surrogate’s Court in a proper case may make directions concerning the custody of an infant (see, also, Matter of Krayem, 177 Misc 842, 844, wherein the Surrogate expressly invited coguardians of the infant to make application to the court if they could not agree upon a reasonable division of actual custody of the infant). Accordingly, it appears that a correct reading of Matter of Lee (supra), not only fails to support the position that a Surrogate may not make a direction as to custody in a guardianship proceeding pending before it, but by necessary implication stands for the proposition that for many years it has been the law of this State that the Surrogate has such power.
Moreover, under the present Constitution of the State of New York and the existing statutory framework, the jurisdic *100 tion of the Surrogate’s Court has been significantly expanded in the more than 60 years that have elapsed since the decision was rendered in Matter of Lee (supra). A multiplicity of issues which were previously deemed to be outside the ambit of the Surrogate’s Court jurisdiction or incapable of being determined in a particular proceeding are presently being adjudicated in the Surrogate’s Court (Matter of Maki v Estate of Ziehm, 55 AD2d 454, modfg and affg 79 Misc 2d 467; Matter of Abraham L., 53 AD2d 669; Matter of Horton, 51 AD2d 856; Dunham v Dunham, 40 AD2d 912; Matter of Benjamin, 93 Misc 2d 1084; Matter of Deitch, 92 Misc 2d 942; Matter of Reed, 91 Misc 2d 997; Matter of Finkle, 90 Misc 2d 550; Matter of London, 90 Misc 2d 351; Matter of Fornason, 88 Misc 2d 736; Matter of Frohlich, 87 Misc 2d 518; Matter of Reiner, 86 Misc 2d 511; Matter of Zalaznick, 84 Misc 2d 715; Matter of Young, 80 Misc 2d 937; Matter of Gebauer, 79 Misc 2d 715, affd 51 AD2d 643; Matter of Goldstein, 79 Misc 2d 4; Matter of Raana Beth N., 78 Misc 2d 105; Matter of Rungo, 74 Misc 2d 239; Matter of Robles, 72 Misc 2d 554; Matter of Rothko, 69 Misc 2d 752; Matter of Lurje, 64 Misc 2d 569; Matter of Dunham, 63 Misc 2d 1029, affd 36 AD2d 467, mot for lv to app den 29 NY2d 485; Matter of Ryan, 63 Misc 2d 415; Matter of Chusid, 60 Misc 2d 462, affd 35 AD2d 655; Matter of MacElroy, 58 Misc 2d 93). The Constitution permits the Legislature to confer jurisdiction upon the Surrogate’s Court as to any matter not within the exclusive jurisdiction of the Supreme Court. In those areas where jurisdiction has been conferred, the Surrogate’s Court has such equity jurisdiction as may be provided by law (NY Const, art VI, § 12, subds d, e).
Implicit in granting equitable relief is the authority to achieve an equitable result. For litigation to end, it must culminate in complete and meaningful relief. The only type of proceeding which is mandated by the Constitution to be within the exclusive jurisdiction of the Supreme Court is a crime prosecuted by indictment (NY Const, art VI, § 7, subd a). The legislative intent with respect to the breadth of the Surrogate’s Court jurisdiction is reflected by the provisions of SCPA article 2 (see SCPA 201, 202, 209). The only area in which the Legislature has evinced an intent to limit the jurisdiction of the Surrogate’s Court is with regard to inter vivos trusts (SCPA 209, subd 4). However, even this limitation on the jurisdiction of the Surrogate’s Court has been held to be restricted to a situation where a party seeks to invoke the *101 jurisdiction of the Surrogate’s Court with regard to an inter vivos trust when there is no other proceeding properly pending before that court. It has been determined that SCPA 209 (subd 4) does not prohibit the Surrogate’s Court from exercising jurisdiction over an inter vivos trust where the exercise of such jurisdiction is incidentally involved with the affairs of a decedent (Matter of Reed, 91 Misc 2d 997, supra; Matter of Fornason, 88 Misc 2d 736, supra; Matter of Frohlich, 87 Misc 2d 518, supra).
With respect to the issues in this case, the Legislature has expressly granted to the Surrogate’s Court the power to appoint a guardian of the person of an infant (SCPA 1701), and to suspend, modify or revoke the letters of guardianship "where the interests of the infant will be promoted by the appointment of another person as guardian” (SCPA 711, subd 9). The Legislature has also expressly conferred upon the Surrogate’s Court "full equity jurisdiction as to any action, proceeding or other matter over which jurisdiction is or may be conferred” (SCPA 201, subd 2) and that in the exercise of its jurisdiction the Surrogate’s Court "shall have all of the powers that the supreme court would have in like actions and proceedings” (SCPA 209, subd 9). Since the Legislature has expressly conferred jurisdiction upon the Surrogate’s Court to appoint guardians of the person and to remove them "where the interests of the infant will be promoted by the appointment of another person as guardian” and the Constitution and the statutes have conferred all equitable and other powers that the Supreme Court would have in like proceedings upon the Surrogate’s Court, it necessarily follows that when the Surrogate’s Court reaches a determination in a proceeding to remove a guardian, in which proceeding the underlying issue is a contest for custody of the infant between the guardian and her natural parents, that the court may enter a decree effectuating its determination. To hold otherwise would not only be contrary to the clear constitutional and statutory mandates but would be offensive to logic.
The logic of this posture of the law is supported by the facts in the instant case. Two extensive sets of hearings were held in this matter. One resulted in an interim determination (see NYLJ, Dec. 15, 1975, p 46, col 1), the second in the final determination upon which the respondent has now exhausted the appellate process. The issue throughout the proceeding was not merely whether respondent should retain a piece of *102 paper evidencing guardianship. The proceedings were clearly a litigation of the best interests of the infant and the rights of the respective parties to her custody. After complete litigation of these issues on both trial and appellate levels, it is the position of respondent that all that the successful litigant has achieved is the right to further litigation. Such a conclusion would for all practical purposes conclude the litigation without discernible benefit to the successful party. Such a result would be a mockery of justice.
A meaningful system of law must be capable of granting effective relief to an aggrieved litigant. The contrary result was eloquently rejected by Judge Cardozo in Matter of Raymond v Davis (248 NY 67, 72), wherein he stated that "to remit the claimant to another forum after all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial.” In the instant matter, the parties engaged in lengthy hearings before this court on the issues of custody and what will best promote the interests of the infant. They utilized all appellate procedures with reference to the court’s determination. To now conclude that the parents of the child must go to the Supreme Court for a new habeas corpus trial on the same issues and a new round of appeals to implement the relief already achieved would result in "a postponement of justice equivalent to a denial” (Matter of Raymond v Davis, supra, p 72). The jurisdictional conclusions reached herein do not imply that should new circumstances dictate, a habeas corpus proceeding would not lie with reference to this child in the future. It does mean that it is concluded that when the custody of the child is germane to affording complete relief to an application which is properly before the Surrogate’s Court, this court need not, and should not, limit itself to the hollow "paper” relief of deciding who should hold legal evidence of guardianship while ignoring the fundamental issue presented by the litigation.
In any event respondent is procedurally barred from asserting his position at this time. Even if the court saw merit in respondent’s jurisdictional argument, which as indicated it clearly does not, it is beyond the jurisdiction of this court at this time to entertain his argument. A decree of this court directed custody. That decree was appealed and affirmed. Under the doctrine of the "law of the case” this court is precluded from reversing its prior direction as to custody. A court, to which an action has been remitted after appeal lacks *103 jurisdiction to review, even for apparent errors, matters decided by a superior appellate court (Van Valkenburgh, Nooger & Neville v Hayden Pub. Co., 44 AD2d 412, 413, affd 36 NY2d 803; Goldenberg v City of New York, 43 AD2d 861; Michalowski v Ey, 8 AD2d 854, affd 7 NY2d 71; Hornstein v Podwitz, 229 App Div 167, 169, affd 254 NY 443).
The sole remaining issue is whether the respondent attorney may be compelled to disclose the name and address of his client. As a general rule, an attorney may be compelled to disclose the name and address of his client on the theory that his knowledge as to these matters did not flow from a confidential communication (Banco Brasileiro v Doe, 36 NY2d 592, cert den 423 US 867; Matter of Kaplan [Blumenfeld], 8 NY2d 214; Tierney v Flower, 32 AD2d 392; Matter of Ruth E. v David E., 76 Misc 2d 2; Anonymous v Anonymous, 59 Misc 2d 149; Todd v Todd, 51 Misc 2d 94; Matter of Franklin Washington Trust Co. [Levine], 1 Misc 2d 697; Falkenhainer v Falkenhainer, 198 Misc 29; People ex rel. Vogelstein v Warden of County Jail, 150 Misc 714, affd 242 App Div 611).
An attorney may validly assert the privilege as to his client’s name or address in the limited instance where the client intended such information to be confidential and further provided that protecting this cloak of secrecy will not aid in carrying out an unlawful purpose (Matter of Kaplan [Blumenfeld], supra). This limited exception to disclosure does not extend to the facts here presented. Judicial determination of issues of custody become a mockery if we are to permit the final chapter of a custody dispute to be the extralegal seizure or secretion of the infant by the unsuccessful litigant who, having exhausted his legal rights, then places personal desire above the law.
The court is appreciative of the deep dedication of counsel to his client’s cause and his willingness to provide them with the ultimate in legal assistance. In the decision of this court rendered on June 23, 1977, the zeal of both counsel was noted as follows: "Both petitioners and respondents were represented by counsel supplied by publicly funded agencies whose function is to provide legal assistance to those who cannot afford to retain counsel. The competence, diligence and dedication of counsel for both petitioners and respondents reflect credit upon themselves, upon the legal profession and upon the determination of a system of law in a free society to *104 provide all of its citizens with equal justice and equal access to the judicial process.”
However, an attorney’s duty to his client is limited to rendering such legal assistance and advice as is required to most effectively pursue their cause within the bounds of the law. It cannot extend to aiding and abetting the client to evade the impact of the orders of the court either by acts of commission or omission.
It is incumbent upon the courts and counsel, as officers of the court, to ensure that the results of litigation are not mere pyrrhic victories to the successful litigant. Litigation must not pragmatically end in a state of circumstances where the successful litigant is denied the benefit of her success. Such a result contributes to promoting disrespect for the rule of law and enhancing a public attitude that judicial determinations have very little import in a real world.
The litigation in this matter is now over. The failure of respondent counsel to disclose the whereabouts of his client does not constitute rendering further legal assistance to his client. What is at issue here are the best interests of the infant (Tierney v Flower, 32 AD2d 392, supra; Anonymous v Anonymous, 59 Misc 2d 149, supra; Falkenhainer v Falkenhainer, 198 Misc 29, supra). Any further delay in effectuating the court’s order could result in irreparable harm to the infant and the successful petitioners.
Accordingly, counsel is directed to disclose all information he has as to the address and whereabouts of respondent and the infant within seven days of service upon him of the order to be settled herein.