In the Matter of HERBERT J. CORNELL, as Executor, etc., of THOMAS H. PLATT, Deceased, Petitioner, for an Order against JAMES A. DELEHANTY, Surrogate of the County of New York, Respondent.

Supreme Court, Special Term, New York County, March 5, 1940.

*Tracy Costigan,* for the petitioner.

*James N. Vaughan,* for the respondent.

BERNSTEIN, J.   This is an application under article 78 of the Civil Practice Act for a mandamus order directing one of the surrogates of New York county to entertain jurisdiction of a proceeding to probate the will of one Thomas H. Platt, deceased, or, in the alternative, to enter a formal order declining to entertain such jurisdiction. The facts are not in dispute and, while the petitioner alleges that the

refusal of the respondent to entertain jurisdiction of the proceeding was arbitrary and wrongful, it is quite apparent that these words are used only in their legalistic sense and that the surrogate was motivated in such refusal by a desire only to sustain a principle and establish a definite procedure in his court.

The deceased, a resident of Pennsylvania, died in Philadelphia on October 6, 1939, leaving a last will and testament, which was attested to by three residents of New York as subscribing witnesses and which named the petitioner, also a resident of New York, as sole executor. He left no real estate, but approximately $4,000 of personal property, consisting of a deposit of cash in a savings bank in New York city, some United States Treasury certificates in a safe deposit box in said bank, and a small deposit of cash in a trust company in Philadelphia. All of the distributees and the beneficiaries under the will were, like the deceased, non-residents.

Some time in December, 1939, the petitioner submitted to the clerk of the Surrogate's Court of the county of New York a petition for the probate of the will, together with such other papers as are customarily required to accompany such petition, and requested the issuance of a citation directed to the parties interested in the estate. The clerk submitted the papers to the respondent, who personally conferred with the attorney for the petitioner, presented his views to him, and then declined to entertain jurisdiction to probate the will. Later on, the petitioner requested the respondent to enter a formal order upon his declination to entertain jurisdiction, but this, too, was refused. At no time has there been any application for or a refusal of the assumption of jurisdiction for the purposes of ancillary administration of the estate under section 159 of the Surrogate's Court Act.

The respondent contends that the petitioner enjoys no access to his court as a matter of right other than as already afforded him, that he has no right to compel his court to take jurisdiction of an original probate proceeding affecting a non-resident's will, and that he has no right to a formal order evidencing a refusal to entertain jurisdiction of such a proceeding. He contends further that the application to this court for a mandamus order will not lie as a matter of right because the petitioner has other adequate remedies and that it should not be granted as a matter of discretion for reasons of economy, public interest and interstate comity.

In support of the latter claim the respondent points out, in an affidavit submitted with his answer, that he is vested with wide discretion under the statute, that in the exercise of such discretion he has given earnest consideration to the subject involved in this proceeding, and that he reached the conclusion, in good faith and

for the public good, that such jurisdiction should not be entertained. That conclusion, he says, is justified by his desire to save his court from the burden of the not inconsiderable expense that attaches to the assumption of jurisdiction in such proceedings, to make more readily available to the residents and taxpayers of New York the facilities for which they are paying, to avoid the resentment of the probate courts of sister States against what they call the invasion of their right to administer the estates of their own residents, and to halt the enactment by all the States of the Union of such discriminatory and retaliatory laws as have already been enacted by a few States as a result of the assumption of such jurisdiction by the courts of non-resident States (N. J. Laws [1939], chaps. 121–123, 139; Fla. Laws [1939], chaps. 19671–19674; R. I. Gen. Laws [1938], chap. 572, § 5).

The practice in the Surrogate's Court has always been regulated by statute and custom. From the earliest times it has been the practice of the surrogates to exercise a preliminary authority to determine whether a projected proceeding will be entertained. Sprinkled throughout the Surrogate's Court Act are such phrases as: " if the surrogate is satisfied " (§§ 144, 205), " if the surrogate entertains an application " (§§ 103, 119, 145, 145-a, 215, 236, 250-a), " if the surrogate is of the opinion " (§ 201), " if it appears to the surrogate " (§ 107), " unless the surrogate declines to entertain the proceeding " (§ 100). They indicate an express legislative recognition of the practice and tradition of the court to make a preliminary scrutiny of all proceedings and to assume or decline to assume jurisdiction on the basis of such scrutiny. That practice has been invoked and exercised by the surrogates of New York county in connection with applications for original probate of a non-resident's will as well as in connection with other proceedings, and has resulted in a refusal to assume jurisdiction in respect thereto. (*Matter of Feeney,* 158 Misc. 246; *Matter of Lamborn,* 168 id. 504; affd., 255 App. Div. 755; *Matter of Spencer,* 169 Misc. 421; *Matter of Handy,* Id. 504.) The result reached in those cases was not due to the fact that the court lacked jurisdiction, for it is expressly vested with such jurisdiction under section 45 of the Surrogate's Court Act and section 23 of the Decedent Estate Law. It was due to the fact that the surrogate in each instance declined to assume such jurisdiction in the exercise of his discretion. This the surrogate had a right to do in each of those cases. This the respondent had a right to do in the instant case.

In an early case the Court of Appeals laid down the standard rule that the general administration of an estate ought to be in the State of domicile. It adverted at length to the undesirable results of

attempting primary administration of an estate in a jurisdiction where the courts should properly perform their functions under an ancillary administration only. (*Parsons* v. *Lyman*, 20 N. Y. 103, 119–121.) That case was cited with approval by Chief Judge PARKER when he discussed the statute which preceded subdivision 3 of section 45 of the Surrogate's Court Act and was couched in identical language (Code Civ. Proc. § 2476, subd. 3, as amd. by Laws of 1892, chap. 399): " The Surrogate's Court seldom takes jurisdiction and never does it do so unless the best interests of the estate and that of the parties interested therein will be subserved by its exercise of the jurisdiction which the statute plainly attempts to confer, and when it does it follows the rule laid down by this court in *Parsons* v. *Lyman* (20 N. Y. 103) as modified by statute." (*Matter of Fitch*, 160 N. Y. 87.)

Under the authorities cited and according to the course and practice of the Surrogate's Court of New York county it is evident that in the exercise of their discretion to entertain or decline to entertain original probate proceedings of the will of a non-resident, the surrogates are guided by the circumstances of each case, by the relative rights of the parties in interest, the presence or absence of the residence in our State of legatees named in the testamentary instrument and other distinctive considerations. In the instant case the respondent was clearly so guided by weighty considerations and lofty motives, and his determination thereon will not be disturbed.

Since the discretion vested in the respondent was either to act or not to act, and he exercised that discretion in favor of declining to act, he was under no obligation to evidence his declination to act by the entry of an order or in any other formal manner.

If the reasons cited were not ample to warrant a denial of the application herein on the merits, such application would have to be denied on the ground that the petitioner has adequate remedies without resort to mandamus. In the first place, he may seek original probate in Pennsylvania, the decedent's domiciliary State, and, if successful there, secure ancillary administration here as a matter of course. This remedy, plainly open to the petitioner, is speedy, inexpensive, convenient and fully as effective as the drastic remedy of mandamus. In the second place, the petitioner may institute his probate proceeding in the Supreme Court, which of course has full jurisdiction. (*Matter of Malloy*, 278 N. Y. 429, 432.)

For the foregoing reasons the application is denied and the proceeding is dismissed, without costs.