Millard L. Midonick, S.
This is a proceeding instituted by the executors of the estate pursuant to SCPA 2103 to discover property. Simon & Schuster, Inc. and the decedent were parties to certain publishing agreements which provided for royalties to be paid to the decedent. The executors allege that there is $57,824.08 in royalty earnings owed to the decedent’s estate in the possession of the respondent and they seek delivery of this amount. The respondent concedes that on September 30, 1974 there was credited to the decedent the sum of $53,452.58 in unpaid royalties. The respondent claims that according to the contractual agreement with the decedent it is not required to pay to the decedent any more than $3,000 during any one calendar year. Moreover, as an affirmative defense the respondent alleges that this court lacks jurisdiction to grant petitioner’s application, since this is a proceeding to collect a common debt or contract obligation.
In Matter of Trevor (309 NY 389) it was held that the Surrogate was without jurisdiction to entertain a discovery proceeding in order to direct a bank to deliver to an estate the proceeds of a bank account. The Court of Appeals held (p 392): "While the statute [Surrogate’s Ct Act, § 205, presently SCPA 2103] speaks in broad and unqualified terms of 'money or *938 other personal property, or the proceeds or value thereof, the decisions interpreting that language disclose that it was not the intention of the Legislature that all estate claims were to be adjusted by way of a discovery proceeding. The purpose of such proceeding in the Surrogate’s Court is to obtain the possession of specific personal property or money which belongs to the estate, or the value of the proceeds thereof in the event of the disposal”.
After the decision in Matter of Trevor, the Legislature in amending section 205 of the Surrogate’s Court Act, added to the jurisdiction of the Surrogate in discovery proceedings. Under the SCPA money or other personal property referred to in SCPA 2103 includes money deposited and all property rights of the depositor consequent on the deposit of money by the decedent or for his account in a banking organization where the depositary claims no beneficial interest other than its proper costs, fees or expenses. For years the courts have been saying that a discovery proceeding may not be used to recover a debt owed to a decedent and that a discovery proceeding is not applicable to recover real property.
We have here a petition seeking to recover a specific fund allegedly set aside under the terms of a contract. The respondent urges that the recovery obtainable is limited by the royalty agreement of the parties and that the cause of action, sounding in contract, must be heard in the Supreme Court rather than in the Surrogate’s Court.
The Tweed Commission labored long and hard to minimize this type of fragmentation and unnecessary shuttling from one court to another. (McKinney’s Session Laws of 1956, Temporary Commission on the Courts, 1956 Report, p 1405.) Some consolidation of jurisdiction was achieved in the form of the new article VI of the State Constitution effecting a substantial court reorganization. In the Eighth Annual Report of the Judicial Conference of the State of New York (1963), at page 9, it was noted that "New York’s first court reorganization in over a century was effected in 1962 by revisions of the State Constitution. By the new Article 6, which became part of the Constitution on January 1st, 1962 and operative on September 1st, 1962, a uniform court system was established”.
Indications of the meaning of the new Constitution in respect to avoiding fragmentation of jurisdiction appear in the broad mandatory provisions of section 12 of Article VI where it is stated: "d. The surrogate’s court shall have jurisdiction *939 over all actions and proceedings relating to the affairs of decedents, probate of wills, administration of estates, and actions and proceedings arising thereunder or pertaining thereto, guardianship of the property of minors, and such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law.”
In Carmody-Wait, New York Practice (2d ed, vol 25, § 149:75, p 69) it is stated: "The mandate of the New York State Constitution is clear and unequivocal: the Surrogate’s Court shall have jurisdiction not only over 'all actions and proceedings relating to the affairs of decedents’ but also over 'administration of estates and actions and proceedings arising thereunder or pertaining thereto.’ Therefore, for the Surrogate’s Court to decline jurisdiction, it should be abundantly clear that the matter in controversy in no way affects the affairs of a decedent or the administration of his estate.”
While the Supreme Court could take concurrent jurisdiction over the contract claim now before this court, in its discretion, if the petitioner had resorted to the court, it would be unthinkable and patently unconstitutional for the Legislature to forbid exercise of jurisdiction by the Surrogate’s Court over such obviously Surrogate’s business as the probate of wills. And so it would be error, less obvious error but error nevertheless, for the Legislature to eliminate concurrent jurisdiction by the Surrogate’s Court over contract claims by estates, since such claims are cases "relating to the affairs of decedents”.
To minimize fragmentation of jurisdiction, section 19 of Article VI of the Constitution provides for transfer, rather than dismissal, of actions and proceedings not cognizable in the transferring court. To this extent there is at least one court in the State of New York since September 1, 1962. Thus, if the respondent in this proceeding were correct that jurisdiction over a contract claim by a decedent’s estate does not lie in this court, its motion to dismiss is inappropriate, since article VI (§ 19, subd d) of the Constitution provides: "The surrogate’s court shall transfer to the supreme court * * * any action or proceeding which has not been transferred to it * * * and over which the surrogate’s court has no jurisdiction.”
The Supreme Court in New York County has held "that the provisions of section 19 of article VI of the Constitution are 'a self-executing grant of constitutional power * * * not depen *940 dent upon any legislative enactment for implementation’ (Frankel Assoc. v Dun & Bradstreet, 45 Misc 2d 607, 610).” (Kemper v Transamerica Ins. Co., 61 Misc 2d 7, 9.) The Civil Court is in accord (Garfinkle v Kaplan, 77 Misc 2d 1097).
The ancient provisions in the Constitution of 1894, continued without change in the Constitution of 1938 until the very day on which our present Constitution’s article VI took effect, set forth merely the vague language: "Surrogates and surrogates’ courts shall have the jurisdiction, legal and equitable, and powers now established by law until otherwise provided by the legislature.” Surely the new constitutional language of September 1, 1962 has some additional meaning in stating that the Surrogate’s Court shall have jurisdiction over all actions and proceedings relating to the affairs of decedents. Nothing that the Legislature can enact can detract from that language. Instead, the Legislature has expressly adopted the broad grant of constitutional power in SCPA 201 in stating that this court shall continue to be vested with all the jurisdiction conferred upon it by the Constitution, including all matters relating to the affairs of decedents.
The September 1, 1962 Constitution has done away with the specific personal property limitations. Indeed, even title to real property claimed by a fiduciary now may be adjudicated, albeit collaterally under a claim for rents, by the Surrogate’s Court (Matter of Hall, 54 Misc 2d 923; Matter of Rungo, 74 Misc 2d 239).
The Legislature, by copying and continuing ancient statutory language in respect to the discovery of "any money or personal property” had neither the authority nor even the intention to contravene the new broad constitutional command of section 12 of article VI of the Constitution. Thus SCPA 202 provides: "The proceedings enumerated in this act shall not be deemed exclusive and the court is empowered in any proceeding, whether or not specifically provided for, to exercise any of the jurisdiction granted to it by this act or other provisions of law, notwithstanding that the jurisdiction sought to be exercised in the proceeding is or may be exercised in or incidental to a different proceeding.”
As the reviser intimates, any power of the Surrogate, whether exercisable in a discovery proceeding, reverse discovery proceeding, construction proceeding, accounting proceeding, or in "an independent proceeding”, can now be adjudicated in the matter before me (SCPA 202; Matter of Gebauer, *941 79 Misc 2d 715). The forms of action were supposed to have been buried in 1848, but occasionally they are said to rule us from their graves. Discovery is a form of action which should not hobble the Surrogate’s Court (Matter of Gebauer, supra; Matter of Ziehm, 79 Misc 2d 467).
Even before the 1962 Constitution, Chief Judge Cakdozo, in more eloquent language than this court can summon, laid down the guiding principle of correct jurisprudence in Matter of Raymond v Davis (248 NY 67, 72) where he ruled: " 'Concentration of jurisdiction as to decedents’ estates’ * * * is the purpose clearly revealed in the statutory scheme. 'The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy’ (per Thomas, J., in Matter of Coombs, 185 App Div 312, 314). To remit the claimant to another forum after all these advances and retreats, these reconnaisances and skirmishes, would be a postponement of jurisdiction equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked.”
This is not to say that the petitioning fiduciary is barred from relief in the Supreme Court on such a claim as is here pleaded. Had the petitioner commenced an action in the Supreme Court, concurrent jurisdiction certainly resides there. Such acceptance of jurisdiction is discretionary with the Supreme Court as it is that court’s discretionary power under article VI (§ 19, subd a) of the State Constitution to transfer such an action to this court.
The Surrogate’s Court would be overwhelmed if all decedents’ tort and contract choses in action were forced upon the court. If bits and pieces of estates in the forms of such choses in action were automatically cognizable whenever decedent’s fiduciaries chose to resort to this court, it could not function (cf. Matter of Sklarsky, 80 Misc 2d 677). Only when a substantial or basic aspect of the administration of an estate is so involved should this court retain such causes if so requested. I have myself so abstained even on the issue of probate when the forum was inconvenient (Matter of Brunner, 72 Misc 2d 826).
Despite the usual application of CPLR 327 to such a case as Brunner (supra), where witnesses and acts in France seem to make the New York County Surrogate’s Court an inconvenient forum, the language of the statute speaks more broadly in terms of staying or dismissing inconvenient actions when *942 "the court finds that in the interest of substantial justice the action should be heard in another forum”, in which case "the court * *, * may stay or dismiss the action in whole or in part on any conditions that may be just.” It would seem that a flood of minor claims against debtors to the estate, or tortfeasors against the decedent, would not serve the interest of substantial justice for Surrogates to hear, since they would not have the time or facilities to handle such matters.
In the estate of one Dunham, the Surrogate of Greene County was required to determine the effect on a widow’s right of election, pursuant to EPTL 5-1.1, of a separation agreement made by the testator with his first wife. The issue was resolved by the Surrogate’s opinion but the finances of the estate required that a stockholder’s agreement entered into by the testator be construed, the effect of an offer of the executrix to purchase corporate shares be decided and the number and price of the shares to be sold be fixed under the stockholder’s contract. Inasmuch as these contractual issues were not then before the Surrogate he retained jurisdiction to entertain a petition which would present these issues. (Matter of Dunham, 63 Misc 2d 1029, affd 36 AD2d 467; mot for lv to app den 29 NY2d 485.) By reason of the determination by the Surrogate, the Supreme Court refrained from exercising jurisdiction in a prior instituted action respecting the stockholder’s agreement. The Supreme Court acted upon the ground of the valid assertion by the Surrogate that the action before the Supreme Court pertained to "matters relating to the affairs of decedents”. Upon appeal to the Appellate Division the action was transferred to the Surrogate’s Court in an opinion which held that article VI of the State Constitution was controlling. (Dunham v Dunham, 40 AD2d 912.)
In the litigations in the Dunham estate the lower courts and the appellate courts considered issues pertaining to the construction and execution of a contract executed by decedent and these courts held such issues to be essential to the administration of the decedent’s affairs within the intendment of our State Constitution and the jurisdiction of the Surrogate’s Court, even though it was conceded that concurrent jurisdiction rested in the Supreme Court. The rationale of the several Dunham opinions is fully applicable to the instant proceeding.
Similar causes were accepted even under the former Consti *943 tution (Matter of Browning, 176 Misc 308; Matter of Browning, 177 Misc 328, affd 262 App Div 489, mot for lv to app den 263 App Div 718, rearg den 263 App Div 809). There the Surrogate ruled that in a discovery proceeding he could properly adjudicate the issue of the claim of an estate for commercial bribes paid by the respondent to agents of the decedent.
In the case at bar the petitioners are in fact seeking the recovery of a fund, whether or not "specific.” There is not agreement between the parties as to the precise dollar amount but there is acknowledgement that a substantial amount has been credited as royalties eventually payable to the decedent or her estate, subject, as respondent asserts, to offset in the event of future returns.
Very recently I have held in Matter of Rothko (69 Misc 2d 752, affd 40 AD2d 1083) that this court has jurisdiction to set aside contracts made by executors to sell the major substance of estate assets to nonfiduciaries and to adjudicate whether or not restitution ought to be made by the nonfiduciaries if the contracts were found, as alleged, to have been made as a result of self-dealing or fraud. An injunction pendente lite was also granted forbidding the nonfiduciary contractors from selling or disposing of the property without court permission (Matter of Rothko, 71 Misc 2d 320, affd 40 A D 2d 965).
Jurisdiction in discovery has been assumed in the Surrogate’s Court even though debts and contract obligations may be involved (Matter of Goldstein, 79 Misc 2d 4). At the very least, a preliminary jurisdictional inquiry is discretionary for the purpose of determining whether in fact a major asset of the estate was earmarked by crediting such money to the account of the decedent, as the respondent seems to concede (Cornell v Delehanty, 173 Misc 483, and Matter of McKay, 33 Misc 2d 297; but cf. Matter of Pucci, 14 Misc 2d 75; Matter of Lifschutz, 54 Misc 2d 289).
This acceptance of jurisdiction, whether it will result in preliminary inquiry or plenary disposition, does not dispose of respondent’s first defense — that the contract expressly provides that in no event shall the respondent publisher pay the author more than $3,000 in any one calendar year. The court will consider that aspect of the defense as a motion for partial summary judgment. Memoranda and affidavits may be submitted on this issue.