[976 NYS2d 492]

In the Matter of the Estate of LUCILLE BUNIN ASKIN, Deceased. GLENN ASKIN, as Executor of LUCILLE BUNIN ASKIN, Deceased, et al., Respondents; CHOATE HALL & STEWART, LLP, Nonparty Appellant; SCHNADER, HARRISON, SEGAL & LEWIS et al., Nonparty Respondents.

Second Department, November 27, 2013

APPEARANCES OF COUNSEL

*Gallet Dreyer & Berkey, LLP*, New York City (*David S. Douglas* and *Pamela Gallagher* of counsel), for nonparty appellant.

## OPINION OF THE COURT

AUSTIN, J.

On this appeal, we are asked to determine whether the Surrogate's Court has subject matter jurisdiction to determine what, if any, legal fees are due to an out-of-state law firm representing an executor in matters relating to the estate. For the reasons set forth herein, we answer in the affirmative and remit the matter to the Surrogate's Court, Westchester County, for a determination of the reasonable and appropriate fees earned by nonparty Choate Hall & Stewart, LLP (hereinafter Choate Hall), in this matter.

The decedent, Lucille Bunin Askin, died on May 10, 1997, survived by her daughter Glenn Askin, formerly known as Glenn Askin Schweich, her son Neil Zachary, and three grandchildren. The decedent's will was admitted to probate in the Westchester County Surrogate's Court on November 18, 1997, and letters testamentary were issued to Glenn Askin, the nominated executor under the will. Glenn Askin, who was a Massachusetts resident at the time of her mother's death and subsequent issuance of letters testamentary, retained Choate Hall, a Massachusetts-based law firm, to render legal services to her in her representative capacity as the executor of the estate. Choate Hall performed extensive legal services on behalf of the estate from May 10, 1997, to May 31, 2003. When the executor moved to New York in 2003, she retained successor counsel. During the time that it represented the estate, Choate Hall, which did not maintain an office in New York, retained New York law firms to appear as counsel on the executor's behalf in the Surrogate's Court.

In March 2004, the executor's successor counsel filed a petition for the judicial settlement of a final account of the estate, which covered the period from May 10, 1997, to May 31, 2003, and included a request that the Surrogate's Court allow and fix the amount of legal fees and disbursements owed to Choate

Hall for the legal services provided by it during that period. The executor averred in her petition that Choate Hall had been paid the sum of $131,260.70. She further averred that legal fees for "ancillary services" billed by Choate Hall in the sum of $2,743.13 remained outstanding.

Zachary filed objections to the executor's account in February 2005, and the decedent's grandchildren filed objections in April 2005. The objections filed by both Zachary and the grandchildren included a challenge to the counsel fees that had already been paid by the estate to Choate Hall. While the objections were pending, the executor filed an amended and supplemental petition for the judicial settlement of the final account, in which she requested that the Surrogate's Court fix the fees and disbursements owed Choate Hall. By that point, fees in the sum of $131,312.83, and disbursements in the sum of $1,766.71, had already been paid to Choate Hall, and additional invoices in the amount of $12,549.33 remained unpaid.

The parties settled the objections to the account by an order and stipulation of settlement dated September 29, 2010, and so-ordered on November 10, 2010 (hereinafter the order and stipulation). As relevant to this appeal, the order and stipulation required the executor to file a second amended and supplemental petition for the judicial settlement of her final account, and directed that Choate Hall contemporaneously file a "Supplemental Affidavit of Legal Services which encompasses all of [its] legal fees and disbursements incurred through and including the date hereof for Court review, determination and award." The order and stipulation further provided that in the event that the Surrogate's Court directed that legal fees be refunded to the estate, 60% of the fees refunded would be paid to Zachary, and 40% of the fees refunded would be paid to the grandchildren.

In accordance with the order and stipulation, in October 2010, the executor, through her successor counsel, filed a second amended petition for judicial settlement of the final account, extended through September 30, 2010. The second amended petition included a request for the Surrogate's Court to fix and determine the legal fees and disbursements to be paid to Choate Hall. As required by the order and stipulation, Choate Hall filed an affidavit of services and a supplemental affidavit of services, detailing the services it provided to the executor, and requested, in the event the court fixed its legal fees, the sum of $161,557.02, of which $133,079.54 represented fees, expenses, and ancillary

services through May 31, 2003, that already had been paid. Such services included the defense and settlement of an audit and inquiries by the Internal Revenue Service; preparation of the petition for probate; preparation of the court inventory for filing with the Surrogate's Court; extensive correspondence and advice in connection with Zachary's refusal to cooperate with aspects of the administration of the estate or abide by the will; and other legal services which the executor paid absent any protest.

The Surrogate's Court subsequently directed Choate Hall to submit a memorandum of law concerning the court's jurisdiction to fix the fees of an out-of-state law firm. In its memorandum of law, Choate Hall emphasized that it was a Massachusetts law firm that had performed legal services solely in Massachusetts based on a Massachusetts retainer agreement. Choate Hall submitted that under these circumstances, the court did not have jurisdiction to review the reasonableness of the fees it had charged pursuant to its retainer agreement with the executor, and fix a reasonable fee. Choate Hall additionally asserted that the executor had never objected to any aspect of the legal fees it had charged, and that neither Zachary nor the grandchildren had identified any specific legal service they found objectionable.

In a decision dated April 19, 2011, the Surrogate's Court determined that it did not have authority pursuant to SCPA 2110 to fix and determine Choate Hall's fee. Relying on Judiciary Law § 470, the court reasoned that it could "only fix the fee of an attorney for the fiduciary and order the fee to be paid out of the estate *if that attorney has an office for the maintenance of business in New York*" (emphasis added). However, the court also determined that it had the authority to direct the return to the estate of counsel fees which had been paid to an out-of-state attorney. Accordingly, it concluded that Choate Hall's application for legal fees was subject to dismissal and that Choate Hall was required to refund to the estate all fees it had been paid, which totaled $133,079.54. The Surrogate's Court then issued a decree of judicial settlement dated June 14, 2011, in which it, inter alia, dismissed Choate Hall's application for legal fees and directed Choate Hall to refund to the estate the sum of $133,079.54. Choate Hall now appeals from so much of the decree as directed it to refund the legal fees it had been previously paid.

■ For the reasons that follow, we find that the Surrogate's Court erred in concluding that it lacked subject matter jurisdic-

tion to fix and determine the compensation owed to Choate Hall for services rendered to the estate. Further, the court should have made a determination as to the fair value of Choate Hall's services, rather than direct that the entire fee be returned. Thereafter, the court should have directed only a refund of such fees paid to Choate Hall that it considered to have been paid in excess of what it determined to be the fair value of Choate Hall's services to the estate pursuant to SCPA 2110.

We begin our analysis by examining the constitutional and statutory scope of the jurisdiction granted to the Surrogate's Court. The New York State Constitution grants Surrogates jurisdiction over "all actions and proceedings relating to the affairs of decedents, probate of wills, administration of estates and actions and proceedings arising thereunder or pertaining thereto" (NY Const, art VI, § 12 [d]). In addition to the constitutional mandate, the Surrogate's Court is required to exercise "full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents" by determining questions that arise between any parties to the action "or between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained" (SCPA 201 [3]).

Pursuant to SCPA 2110, the Surrogate's Court has the authority to fix and determine the compensation of an attorney for services rendered, inter alia, to a fiduciary of an estate (see SCPA 2110 [1]). Where such attorney has already received or been paid an amount "in excess of the fair value of his [or her] services as thus determined the court is authorized to direct him [or her] to refund the excess" (SCPA 2110 [3]).

With regard to the Surrogate's Court's supervision of attorney compensation for services rendered, SCPA 209 grants the Surrogate's Court "all of the powers that the supreme court would have in like actions and proceedings" (SCPA 209 [10]; see Matter of Stortecky v Mazzone, 85 NY2d 518, 525 [1995]; see generally David D. Siegel and Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 209 at 182-183).

The Court of Appeals, in Matter of Piccione (57 NY2d 278, 287-288 [1982]), delineated the history of the continuous legislative expansion of the Surrogate's Court's subject matter jurisdiction over matters relating to the affairs of decedents. It explained that " 'for the Surrogate's Court to decline jurisdiction, it should be abundantly clear that the matter in contro-

versy in no way affects the affairs of a decedent or the administration of his estate' " *(id.* at 288 [internal quotation marks omitted], quoting *Matter of Young,* 80 Misc 2d 937, 939 [Sur Ct, NY County 1975]). In *Piccione,* the Court found that an eviction proceeding brought by executors in an attempt to wind up the administration of an estate was properly commenced in the Surrogate's Court where the premises were to be sold and the proceeds were to go to the estate for distribution by the Surrogate. The Court of Appeals reasoned that this was so since "it [could] hardly be said that this controversy 'in no way affects the affairs of the decedent or the administration of the estate' " *(Matter of Piccione,* 57 NY2d at 290, quoting *Matter of Young,* 80 Misc 2d at 939).

Indeed, even before the Court of Appeals, in *Piccione,* recognized the broad scope of the Surrogate's Court's jurisdiction over matters affecting the affairs of a decedent, it had already held, under circumstances similar to those at bar, that the Surrogate's Court had authority to fix and determine the compensation due to an out-of-state attorney for services to an estate or its representative. In *Matter of Matheson* (265 NY 81, 85-86 [1934]), the executors of an estate in Suffolk County retained a law firm to handle all of the legal and tax matters arising out of the administration of the estate. The law firm was authorized to employ outside counsel. It then retained a Washington D.C.-based attorney, who was not admitted to practice in New York, to render services to the estate before the "Tax Unit." When the Washington D.C.-based attorney presented a bill in the sum of $187,456.57 for services rendered to the executors, the executors rejected the claim. The executors then moved in the Surrogate's Court for the issuance of a citation requiring the out-of-state attorney to appear, give testimony and proof in support of his claim, and show why his compensation should not be fixed and determined pursuant to Surrogate's Court Act § 231-a, the predecessor to SCPA 2110 *(see Matter of Matheson,* 240 App Div 285, 286 [1934]). A citation was issued by the Surrogate's Court upon the attorney in Washington D.C. The attorney contested the Surrogate's Court's jurisdiction over the subject matter of the proceeding and over his person. The Surrogate's Court vacated the issuance of the citation, reasoning that Surrogate's Court Act § 231-a, the predecessor to SCPA 2110, did not apply to attorneys of other jurisdictions. The Appellate Division reversed, and certified to the Court of Appeals the question of whether the Surrogate's Court acquired jurisdiction to adjudicate the fee claim raised in the proceeding.

The Court of Appeals, in answering the certified question, noted that a New York attorney in the same circumstances could adjudicate his claim in the Surrogate's Court, and found that there was "no reason why the non-residence of the [lawyer] and his nonadmission as an attorney in the courts of this State should in any way affect" the court's subject matter jurisdiction concerning fees earned by an out-of-state attorney under Surrogate's Court Act § 231-a. Thus, it concluded that "[t]he objection interposed to the jurisdiction over the subject-matter is without substance" (*Matter of Matheson*, 265 NY at 86).

Guided by the reasoning in *Matheson,* the Surrogate's Court concluded, in *Matter of Stern* (62 Misc 2d 730 [Sur Ct, NY County 1970]), that it had subject matter jurisdiction to fix the compensation of an out-of-state certified public accountant who provided services that were essentially legal in nature. In *Stern,* the executors retained the out-of-state certified public accountant to represent the estate before the Internal Revenue Service (hereinafter the IRS) and the Tax Court of the United States. The executors eventually paid the certified public accountant $150,000 for his services after he and his staff convinced the IRS to withdraw the notice of deficiency of taxes in the amount of $2,515,697 served upon the estate. A residuary legatee commenced a proceeding to fix the accountant's compensation pursuant to SCPA 2110. The executors and the accountant moved to dismiss the proceeding on the ground that the Surrogate's Court was without subject matter jurisdiction since the compensation sought to be fixed was not due a lawyer, but a certified public accountant.

The Surrogate's Court determined that the certified public accountant and his staff had essentially provided legal services, noting that the memorandum of law they submitted to the IRS analyzed legal issues including the proper interpretation of the decedent's will, the laws of New York concerning charitable remainders, the fiduciary obligations of the trustees under the laws of New York, and the qualification of the remainders as deductions under federal tax law. The Surrogate's Court also pointed out that the memorandum was signed by the certified public accountant, who was admitted to practice before the IRS, and three others. One of the accountant's associates, who signed the memorandum, was an attorney admitted to practice before the United States Tax Court.

The Surrogate's Court, relying on *Matheson* and SCPA 2110, found that it had subject matter jurisdiction to determine the

reasonableness of compensation payable out of the decedent's estate to a nonmember of the New York bar who rendered legal services before a tribunal in which he was admitted to practice (*see Matter of Stern*, 62 Misc 2d at 731-732). Thus, it determined that it had the authority to determine "the fair value of the services to the estate" (*id.* at 733), explaining that "[t]he subject matter jurisdiction of this court is strengthened by considerations of the policy of this State concentrating jurisdiction as to decedents' estates in the Surrogate's Court" (*id.* at 732). Pointing to SCPA 201 (3), the court in *Stern* found "full and complete general jurisdiction" to administer justice in all matters relating to the affairs of decedents, observing, "of course the reasonableness of administration expenses is traditionally a matter relating to the affairs of decedents" (*id.*).

Both *Matter of Nunno* (161 Misc 707 [Sur Ct, Richmond County 1937]) and *Matter of Johnson* (149 Misc 813 [Sur Ct, Kings County 1933]), upon which the Surrogate's Court relied in determining that it had to reject Choate Hall's claim for payment, are readily distinguishable.

In *Nunno,* the decedent died in 1928. According to her will, she created a trust of one sixth of her estate for the benefit of her grandson Michael. The assets of the estate were all parcels of real property subject to mortgages. From time to time, the fiduciaries of the estate paid distributions to the distributees of the estate, including Michael. In 1931, Michael retained a New Jersey-based attorney to represent him to collect his share of the income from the assets of the estate. According to the retainer agreement Michael executed, he was to pay the New Jersey-based attorney, inter alia, 25% of the net proceeds collected. There was no proceeding pending with respect to the estate at the time the retainer agreement was executed. In 1936, the fiduciaries sent the attorney $2,155, representing Michael's share of trust income, of which the attorney retained $538.75. Thereafter, Michael discharged the attorney and the attorney refused to accept the discharge and sent Michael a bill for $2,500 (*Matter of Nunno*, 161 Misc at 708-709).

In a proceeding to settle their account, the fiduciaries named Michael and the attorney as parties. The fiduciaries requested that the Surrogate's Court determine to whom the income of the trust that was due Michael should be paid. The attorney appeared in response to the citation served upon him and requested that the Surrogate fix his compensation pursuant to former Surrogate's Court Act § 231-a. Michael asked for a

refund of the $538.75 retained by the attorney (*see Matter of Nunno*, 161 Misc at 709-710).

The Surrogate's Court rejected the attorney's claim, pointing out that the attorney "performed no legal services for [Michael] in relation to said estate, in the State of New York, and none were required to be performed elsewhere" (*id.* at 709). The court found that *Matheson* was distinguishable, reasoning that the Court of Appeals did not intend that its holding "apply to an attorney who had no authority to perform legal services in this State, unless the services involved were required to be performed for the estate or person interested, in the jurisdiction where the attorney was admitted to practice or in a Federal jurisdiction" (*id.*). Accordingly, the Surrogate directed that Michael be paid his entire share of trust income, and dismissed the attorney's claim for compensation for legal services (*id.* at 710).

*Johnson* also involved the engagement of an out-of-state attorney by distributees of the decedent. The distributees initially consulted a New Jersey-based attorney about their objections to the probate of the decedent's will. Eventually, the distributees contacted a New York attorney who negotiated a settlement with the estate resulting in the withdrawal of the distributees' objections (*see Matter of Johnson*, 149 Misc 813 [1933]).

Before distribution of the estate's assets was made, the New Jersey-based attorney commenced a proceeding pursuant to former Surrogate's Court Act § 231-a to fix and determine his compensation for services rendered to the distributees. The distributees and the proponent of the estate objected on the basis that the Surrogate was without jurisdiction to grant the relief requested. The Surrogate agreed, finding that "[t]he benefit given by [former Surrogate's Court Act § 231-a] is for the protection of attorneys of this State and does not apply to attorneys of other States or countries" (*id.* at 813).

The facts of this case bear a closer similarity to those in *Matheson* and *Stern* than to those in *Nunno* and *Johnson*, since the services rendered by Choate Hall were for the benefit of the estate, and not for an individual, a beneficiary, or a distributee. According to the affidavits of services submitted by Choate Hall to the Surrogate's Court, the legal services Choate Hall performed on behalf of the estate, from May 10, 1997, to May 31, 2003, included, inter alia, preparation and filing of the federal and New York estate tax returns, defense and settlement of an audit and inquiries by the IRS, defense of the valuation of the decedent's art collection in an inquiry by the Art Ad-

visory Panel of the IRS, preparation of the petition for probate, preparation of the court inventory for filing with the Surrogate's Court, extensive correspondence and advice in connection with Zachary's refusal to cooperate with aspects of the administration of the estate or to abide by the will, and other legal services which the executor paid absent any protest.

John M. Cornish, a partner of Choate Hall who was in charge of this matter on behalf of the firm, explained in the affidavit of services dated April 16, 2004, that he specialized in legal, business, and tax advice to individuals, trusts, and estates, and that he had extensive experience in representing clients before the IRS. He stated that, pursuant to the terms of the retainer agreement signed by the executor, Choate Hall was hired to "perform all legal services requisite to the probate of the decedent's will, administration of the decedent's estate, preparation and filing of the federal and New York estate tax returns and judicial settlement of the final account." In his supplemental affidavit of services dated October 25, 2010, Cornish asserted that "[a]ny work conducted by this firm during the period of April 16, 2004 through September 30, 2010 in connection with the preparation of federal and state fiduciary income tax returns was carried out by experienced fiduciary accountants under my supervision." Accordingly, a portion of the work performed concerned the preparation and filing of tax returns and the subsequent defense of the estate during an audit by the IRS, establishing parallels between this case and *Matheson* and *Stern*.

In addition, although the remaining legal services were not required to be performed in Massachusetts, the work consisted of legal services which were required to be performed on behalf of the estate. Further, Cornish explained how Choate Hall engaged New York-based law firms Winthrop Stimson Putnam & Roberts, now known as Pillsbury Winthrop Shaw Pittman (hereinafter Pillsbury Winthrop), Schnader Harrison Segal & Lewis, and Collier Halpern Newberg Nolletti & Bock, LLP, to assist with legal work in New York, including the preparation and filing of documents in the Surrogate's Court on behalf of the estate. It is unclear from the papers if the amounts fixed by the Surrogate as compensation for Pillsbury Winthrop, and Collier Halpern Newberg Nolletti & Bock, LLP, include the amounts referenced by Cornish in his affidavit or if those amounts were in addition to the amounts stated in the affidavit. According to Cornish, however, Choate Hall advanced payment to Pillsbury Winthrop in the sum of $6,255.33, for which it had not been

reimbursed by the estate. Thus, some of the fees due Choate Hall related to those which it advanced to a New York-based firm to file documents in the Surrogate's Court.

As the approval or disgorgement of legal fees already paid to Choate Hall will, one way or the other, affect the administration of the decedent's estate, the Surrogate's Court's determination that it lacked subject matter jurisdiction was error. Rather, the Surrogate's Court should fix and determine the fair compensation of Choate Hall for services rendered (see Matter of Piccione, 57 NY2d at 287-290).

The Surrogate's Court also erred in relying upon Judiciary Law § 470 to support its conclusion that "this court can only fix the fee of an attorney for the fiduciary and order the fee to be paid out of the estate if that attorney has an office for the maintenance of business in New York." Judiciary Law § 470 merely permits attorneys having offices in this State to "reside[ ] in an adjoining state." Nothing in the language of this provision, nor the language of SCPA 2110, explicitly limits the authority of the Surrogate's Court with regard to compensation to out-of-state attorneys.

Moreover, the Surrogate's Court erred in directing the return of all of the fees paid to Choate Hall without first finding that the amount paid to Choate Hall was excessive. "There is no hard and fast rule for determining reasonable compensation, but a Surrogate, in exercising this power, must do so 'with reason, proper discretion and not arbitrarily' " (Matter of Rappaport, 150 AD2d 779, 781 [1989], quoting Matter of Brehm, 37 AD2d 95, 97 [1071]; see Matter of Levy, 111 AD2d 849, 850 [1985]). The fixing of reasonable attorney's fees is to be determined by factors including:

> "time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer's experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved"
> (Matter of Freeman, 34 NY2d 1, 9 [1974]; see Matter of Barich, 91 AD3d 769, 770 [2012]).

Another factor that may be considered is "the bitter nature of the contest which necessitated many of the services" performed by counsel (Matter of Tobias, 232 AD2d 341, 341 [1996]).

The Surrogate's Court recognized that these factors were to be considered in determining the reasonableness of fees for each of the New York law firms which provided services to the estate, but neglected to consider them with respect to Choate Hall. The Surrogate should have considered the traditional factors in determining the fair value of the legal services provided by Choate Hall before rendering a decision requiring the refund of all of the fees since, pursuant to SCPA 2110 (3), "[i]n [the] event that any such attorney has already received or been paid an amount in excess of the fair value of his services as thus determined the court is authorized to direct him to refund the excess" (*see Matter of Freeman*, 34 NY2d at 9-10). If, after considering the appropriate factors, the Surrogate finds that Choate Hall charged the estate an amount in excess of the fair value of its services, then the Surrogate is authorized to direct a refund. However, such refund would be statutorily limited to disgorgement only of "the excess" (SCPA 2110 [3]).

Accordingly, the decree is reversed insofar as appealed from, on the law, Choate Hall's application for legal fees in the sum of $161,557.02 is reinstated to the extent that it seeks, in effect, to retain legal fees in the sum of $133,079.54, which had already been paid to it by the estate, and the matter is remitted to the Surrogate's Court, Westchester County, for further proceedings in accordance herewith.

DILLON, J.P., BALKIN and COHEN, JJ., concur.

Ordered that the decree is reversed insofar as appealed from, on the law, without costs or disbursements, the application of nonparty Choate Hall & Stewart, LLP, for legal fees in the sum of $161,557.02 is reinstated to the extent that it seeks, in effect, to retain legal fees in the sum of $133,079.54, which had already been paid to it by the estate, and the matter is remitted to the Surrogate's Court, Westchester County, for further proceedings in accordance herewith.